### No. 3161

### Second Circuit

----

### MARTIN v. JONESBORO DRUG CO., ET AL.

----

(December 21, 1927. Opinion and Decree.)

----

(*Syllabus by the Court*)

1. Louisiana Digest—Negligence—Par. 3; Medicine—Par. 6.

Section 7 of Act No. 66 of 1888 requires pharmacists, druggists or apothecaries to place a "poison" label on all packages containing medicines, drugs or chemicals which are in their nature poisonous to the human system or to animals, and as this statute is enacted for the protection of others, the failure of the pharmacist or druggist to so label such packages is negligence.

2. Louisiana Digest—Negligence—Par. 38; Pleading—Par. 23.

The fact that a medicine compound contains poisonous ingredients does not necessarily make the medicine itself a "poison" under the statute, so that an allegation that a medicine contains poisonous ingredients is not equivalent to an allegation that the medicine itself is a poison in the absence of an allegation that it contains those ingredients in such quantities as to make it such in fact.

3. Louisiana Digest—Negligence—Par. 36, 38, 40; Pleading—Par. 23.

In a suit against a druggist for damages for the death of an infant resulting from its swallowing medicine dispensed by the druggist, where the only negligence charged against the druggist is that the medicine was sent out in a package not labeled "poison", it must be affirmatively shown from the allegations of the petition that the alleged negligence had some causal relation or connection with the death and injury.

4. Louisiana Digest—Negligence—Par. 3, 15; Medicine—Par. 6.

Although the violation of a statute is negligence, which negligence may be made the basis for a suit for damages, yet there must be a causal relation between such act of negligence and the injury to render the defendant liable, and such violation must be the proximate cause of the injury; and in this respect it must appear that compliance with the statute would have prevented the injury.

5. Louisiana Digest—Negligence—Par. 36, 38; Pleading—Par. 62; Medicine—Par. 6.

In suits for personal injuries grounded upon negligence of defendant, in order for plaintiff to recover it must be alleged and shown that defendant was guilty of negligence; and even though there is in the petition a specific allegation of negligence, on the part of defendant, if the petition as a whole shows that there was in fact no negligence, no cause of action is shown.

Appeal from the Third Judicial District Court of Louisiana, Parish of Jackson. Hon. S. D. Pearce, Judge.

Action by Emery A. Martin, et al., against Jonesborough Drug Co., Inc., et al.

There was judgment for defendants and plaintiffs appealed.

Judgment affirmed.

Moss & Moss, of Winnfield, attorneys for plaintiffs, appellants.

William J. Hammon, of Jonesboro, attorney for defendants, appellees.

ODOM, J. This suit is brought under Article 2315 of the Civil Code for damages resulting from the death of plaintiffs' infant son caused by the child's taking an alleged poisonous drug dispensed by defendants; the negligence charged against defendants being that they dispensed the drug without placing upon the package a label showing that it contained poison, as required by Section 7 of Act No. 66 of 1888.

An exception of no cause of action was filed by defendants and sustained by the court. Hence this appeal.

## OPINION

Plaintiffs allege that about September 18, 1925, Orbin Malone was at their home sick; that he applied to Dr. C. S. McDonald for treatment, who gave him a prescription, which was filled and the medicine dispensed by defendants and delivered to Malone; that said medicine consisted of pills which were placed in a paper box labeled "For Orbin Malone" with directions "One Pill Three Times a Day after Meals"; that the box containing the pills was not labeled with the word "Poison" and did not have printed thereon a "skull and cross bones" as required by law "to indicate and show said Orbin Malone or anyone else whose duty it was to take or give said medicine that same contained poison"; that said Malone carried the medicine to plaintiffs' residence, where he was staying; "that the said pills contained both strichnine and arsenic in sufficient quantities to take human life, all to the knowledge" of defendants; and "on or about September 21, 1926, Darwin Martin, the infant son of petitioners, then about eighteen months of age, and too young and of such tender age to know that said pills were medicine and contained poison, and in some way unknown to petitioners got the box containing the pills from the place where said pills were being kept by Orbin Malone in the home of petitioners, took one of said pills containing strichnine and arsenic and swallowed it, which killed the said Darwin Martin".

They further allege that they had seen the box containing the pills and had noticed that it was not labeled "Poison" and that they did not know and had no reason to know that said pills contained poison and concluded that they were harmless and "that said medicine was kept in a convenient place for Orbin Malone, *and out of the way and reach of petitioners' infant son* and other small children in the home and it was through no fault of petitioners or any inmate of said home that Darwin Martin got in possession of such, took the pill containing strichnine and arsenic which caused his untimely death; and, in paragraph 14 of the petition, it is set out that "the death of said Darwin Martin was caused by the gross carelessness, recklessness and purposeful violation of the laws of Louisiana by the Jonesboro Drug Company, Inc., and W. H. Eldred, failing, neglecting and refusing to label the box containing said pills with a skull and cross

bones and with the word 'Poison' in large heavy lettering".

We have carefully read plaintiffs' long petition, containing four pages of single spaced typewritten matter, drawn with minutest detail, and we find that nowhere therein is it specifically alleged that the pills were poison, although it is alleged that the package should have been so labeled as to show that fact. But the petitioner iterates and reiterates that the pills were of a compound which contained poisonous ingredients, to-wit: strichnine and arsenic.

On the contrary, the whole petition negatives the idea that they were poison, for it is alleged that they were prescribed by a physician for Malone who was directed to take three of them each day, and presumably he did take some of them, as he took them home some two or three days previous to the day on which the child swallowed one of them.

An allegation that a medicine contains poisonous ingredients is not equivalent to an allegation that the medicine itself is poison, because it might contain those poisonous ingredients in such small proportionate quantities that the medicine, when taken in prescribed doses, is harmless. There is nothing in the petition to indicate how much of either strichnine or arsenic there was in one of the pills. We are by no means satisfied from the allegations of the petition that the package should have had on it a poison label showing that it contained a poison.

It is a matter of common knowledge that many patent medicines which contain strichnine or arsenic or both are sold over the counters of druggists every day, without a prescription. It would hardly be contended that such medicines are poison and

should be labeled with a skull and cross bones merely because they contain some poisonous ingredients.

Madden's anti-malaria pills are sold in all drug stores in this section and are as staple as quinine. Each of these pills, according to the formula, is composed of strichnine ¼ gram, iron 1 gram, aloes 1-6 gram, and arsenic acide 1-24 gram.

Bland's pills contain, arsenic trioxide 1-40 gram, strichnine sulphate 1-60 gram, and "powdered bland" 5 grams.

We have in mind the well-known liquid tonic commonly called the "I. Q. S." prescription, so named because its principal ingredients are iron, quinine and strichnine.

These pills and this tonic are not considered poisonous and are not in fact such. They are sold by druggists at retail in broken packages on which there is never a "Poison" label.

A reading of plaintiffs' petition does not show, therefore, that the pharmacist who dispensed the pills to Malone should have placed on the package a "Poison" label, as it does not show that the pills were poison.

It therefore follows that as the only negligence charged in the petition against the defendants is that they dispensed the medicine without placing on the package a "Poison" label, the petition charges no negligence at all, and for that reason the plaintiffs' suit falls.

It may be argued that inasmuch as plaintiffs have specifically alleged negligence they showed a cause of action on that point under the well-recognized rule that in considering whether a petition discloses a cause of action the allegations must be accepted as true. But there is another

equally as well-recognized rule that the petition must be considered as a whole in deciding whether it shows a cause of action.

While plaintiffs alleged negligence, yet the petition, considered as a whole, shows that there was none.

But plaintiffs are out of court for another and perhaps a more obvious reason.

If it be conceded that the medicine dispensed by defendants was such a "medicine, drug or chemical" as should have been labeled "Poison" under Section 7 of Act No. 66 of 1888, and that defendants' failure to so label the package was a violation of the statute and negligence per se, it does not necessarily follow that defendants are liable in damages for the child's death caused by swallowing the medicine.

Learned counsel, in brief, say:

"The death of Darwin Martin was caused by the defendants willfully and purposely violating the law of Louisiana, when they dispensed the medicine without labeling or marking it in the manner provided by law."

If the allegations of the petition show that defendants' negligence in failing to properly label the package had any causal relation or connection with the injury and death of the child, it sets out a cause of action on that point.

It is reasonably well settled and, for the purposes of this decision, it is conceded that the failure to comply with the provisions of a statute enacted for the safety and protection of others is negligence per se (29 Cyc. 436), but is equally as well settled that where such negligence alone is plead as a basis of the right of recovery in actions for damages, it must appear that there was a causal relation or connection between the negligence arising from the violation of the law and the injury and damage sustained.

In 29 Cyc. 437, it is stated that while in some cases it is held that while the violation of a statute or ordinance is not negligence per se, it is competent evidence and sufficient to justify a finding that such violation was negligence, and the text writer goes on:

"If, however, it is apparent that such violation could have had no influence in causing the injury then the jury have no right to consider it."

And, on page 439 of the same volume, it is said:

"Although the violation of a statute is held to be negligence per se, there must be a causal relation between such act and the injury to render defendant liable, and such violation must be the proximate cause of the injury. And in this respect it must appear that compliance with the ordinance would have prevented the injury."

Applying this last well-settled rule in the case at bar, it is patent that there was no causal connection or relation between defendants' negligence in failing to properly label the package and the injury to the child. It is apparent that the failure to properly label the package could have had no influence in causing the child to swallow the medicine.

It does not appear that defendants' compliance with the statute would have prevented the injury. The child was an infant, eighteen months old, and therefore not able to read and could not have understood the meaning of a "poison" label if one had been on the package, and it so alleged.

But counsel say in brief:

"If such information had been conveyed by the proper labeling of the medicine or

package containing it, petitioners would have known at once that the medicine brought into the home by Orbin Malone was dangerous to human life and would have had sufficient warning to have caused them to use greater precautionary methods than they *perhaps* did exercise in keeping the package and medicine in the home."

But, according to the specific allegations of the petition, the—

"medicine was kept in a convenient place for Orbin Malone, *and out of way and reach of petitioners' infant son and other small children in the home.*"

The medicine was prescribed by a physician for Malone who had a right to keep it and use it, and, as alleged, it was kept in a convenient place for him, *but out the way and reach of the child.* What more could have been done for the protection of the child than was done? If there had been on the package a "poison" label, what more would or could have been done than was done; that is, to keep the medicine out of the way and reach of the child?

It is therefore perfectly apparent from the petition that plaintiffs' alleged negligence in failing to place on the package a proper label is not even remotely connected with the death of the child, and for that reason the petition sets out no cause of action.

The judgment is affirmed with costs.