153 So.2d 869

Peter J. THEUNISSEN

v.

Patrick Victor GUIDRY et al.

No. 46510.

June 4, 1963.

Hall, Raggio & Farrar, by Edgar F. Barnett, Lake Charles, for defendants-relators.

Knight & Knight, Herschel N. Knight, Jennings, for plaintiff-respondent.

HAMLIN, Justice.

In the exercise of our supervisory jurisdiction, we directed Certiorari to the Court of Appeal, Third Circuit, in order that we might review its decision affirming a judgment of the trial court awarding plaintiff $3,722.50, together with legal interest, as damages for personal injuries and property loss suffered in an intersectional automobile collision. Article VII, Section 11, of the Louisiana Constitution of 1921, LSA.

On November 7, 1960, at approximately 7:00 A.M., plaintiff, Peter J. Theunissen, 63 years of age, was driving a 1951 Plymouth automobile north on Doyle Street in the City of Jennings, Louisiana. The defendant Patrick Victor Guidry, age 21 years, was driving a 1955 Chevrolet vehicle in an easterly direction on Howard Street. The weather was not inclement and visibility was not impeded. The streets cross each other, their intersection being described as an "uncontrolled intersection," i. e., an intersection having no semaphore lights nor stop signs; they are approximately the same width and of equal dignity, and both have blacktop surfaces. The Guidry car and the Theunissen car collided in the southeastern portion of the intersection of Howard and Doyle Streets; the left front of plaintiff's vehicle struck the right door of defendant Guidry's automobile. Immediately prior to the accident, Theunissen's car was to the right of Gui-

dry's car, and, under the following provision of Ordinance 371, Section 9, Traffic Laws of the City of Jennings, Louisiana, Theunissen had the right-of-way to cross the intersection and was in a favored position:

"* * * in the City of Jennings, all vehicles approaching from the right shall have the right-of-way over those approaching from the left; * * *."[1]

Theunissen suffered personal injuries and property damage as a result of the collision, and he instituted the present proceedings. He alleged in part that the defendant Guidry was negligent in failing to yield the right-of-way in violation of Ordinance No. 371, Section 9, of the City of Jennings, Louisiana; in failing to yield the right-of-way after he, Theunissen, had preempted the intersection; and, in violating Ordinance No. 371, Section 22, of the City of Jennings, Louisiana.[2]

Defendant Guidry and his insurer, Traders and General Insurance Company, denied Guidry's negligence and denied that his actions were the proximate cause of the collision. They contended alternatively that if Guidry was found guilty of negligence and that such negligence was the proximate cause of the injuries and damage complained of, such being denied, the right of plaintiff to recover was barred by his own acts of contributory negligence. The acts of contributory negligence were averred, in part, to be plaintiff's failure to keep a proper and complete lookout for persons and property making lawful use of the street; failure to yield the right-of-way after Guidry had preempted the intersection; and, failure to exercise that degree of care required by the rules of the road and of common sense and prudence.

Plaintiff and defendant Guidry gave depositions, and the case was submitted to the trial court on the depositions, photographs, and a photographer's affidavit

Theunissen's deposition is to the effect that at the time of the accident he was on

---

1. LSA–R.S. 32:237 in force and effect at the time of the accident provided: "When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. The driver of any vehicle traveling at an unlawful rate of speed or in an unlawful manner shall forfeit any right of way which he might otherwise have."

LSA–R.S. 32:121, Act 310 of 1962, provides in Section B that "When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right."

2. "Be it further ordained, etc., That all vehicles shall be driven carefully and with due regard for the safety and convenience of all other vehicles and pedestrians. Nothing herein omitted shall be construed to relieve any person operating a vehicle upon any street of said City of Jennings for any purpose whatsoever, from the exercise of reasonable care to avoid or prevent injury, to person or property, through collision with persons or vehicles, or otherwise."

his way to work, and that as he approached Howard Street, "Well, I looked left and I didn't see nothing. I looked right and I didn't see nothing. I come on and first thing I know the car was right at me. I didn't see him coming." Theunissen estimated his speed at between fifteen and twenty miles per hour, because he had stopped for a stop sign on the preceding street. When asked how far he thought he could see down Howard Street when he looked left, he replied, "Well, I guess maybe a half a block." Theunissen said that when he looked down Howard Street he was about two car lengths from the intersection; that he did not look down Howard Street again and started on toward and through the intersection. Theunissen's deposition is affirmative to the effect that he did not see the Guidry car until he hit it.

Defendant Guidry stated that at the time of the accident he was on his way to work; that as he approached the intersection he was traveling at a rate of approximately fifteen miles per hour. Guidry's pertinent testimony is as follows:

"Q. When you entered the intersection did you stop before you entered the intersection?

"A. No, sir.

"Q. You maintained approximately the same speed going into the intersection that you had been

driving, say, a block before the intersection, is that correct?

"A. No, sir, I slowed a little.

"Q. Slowed a little?

"A. I was going twenty to twenty-five and I slowed to approximately fifteen when I passed through the intersection.

"Q. Did you look to your left or to your right as you entered the intersection?

"A. Yes, sir.

"Q. Which way did you look first?

"A. I can't recall.

"Q. You do recall that you did look before you entered the intersection?

"A. Yes, sir.

"Q. Did you see Mr. Theunissen who was, I believe, driving the motor vehicle to your right as you were entering the intersection?

"A. Yes, sir.

"Q. Did you see him prior to you entering the intersection?

"A. Yes, I saw him before, yes, right before I entered the intersection.

*   *   *   *   *   *

"Q. Isn't that about the sum and substance of the situation there, you really thought you could clear

the intersection before he got into the intersection, is that right?

"A. The reason for that was because, naturally, I was in—I had entered the intersection before he did and consequently I thought he was stopping, so then I just continued on, when I saw he didn't stop, when he wasn't stopping, that is when I—

"Q. You know that he had the right of way in the City of Jennings, don't you, at that intersection?

"A. Well, that is, the law reads, I believe he does.

   *     *     *     *     *     *

"Q. How far would you say, approximately, was Mr. Theunissen from this intersection when you first saw him?

"A. I would say about five or five and a half car lengths away.

"Q. Was your visibility blocked any at this intersection as you would look to the right to attempt to see a car entering the intersection from your right?

"A. No, sir.

   *     *     *     *     *     *

"Q. In other words, there was no reason why you shouldn't have seen Mr. Theunissen, is that right?

"A. No, sir.

"Q. And you did, in fact, see him?

"A. Yes, sir.

"Q. How far away from the intersection were you when you saw Mr. Theunissen?

"A. About three or four car lengths, I imagine.

   *     *     *     *     *     *

"Q. Now, obviously Mr. Theunissen was doing approximately fifteen miles per hour himself, is that correct, or are you able to estimate his speed?

"A. I would say when I first saw him he was going approximately that speed but as we both went on it appeared to me like he was stopping.

"Q. Making an effort to stop?

"A. Yes, sir, he was slowing down.

"Q. Did you make any efforts to stop after you entered the intersection?

"A. No, sir. I saw that I was a little further in the intersection than he was, I would say a car length or car and a half further in the intersection than he was. I kept on going. When I noticed that he wasn't stopping, that is when I tried to dodge out of the way and right at that moment I tried to speed up.

"Q. You tried to speed up just before the impact, isn't that correct?

"A. Yes, sir.

"Q. Did you more or less floorboard your automobile as you entered the intersection and saw the condition developing?

"A. I would say I did but a car in third gear won't pick up much speed going that. I would say I did. My foot might have been on the floorboard for three or four seconds until it happened.

\* \* \* \* \* \*

"Q. Now, at the time that you entered the intersection with your car, Mr. Guidry, where was Mr. Theunissen's car with relationship to the intersection?

"A. He was about a car and a half away from the intersection.

"Q. Where were you in the intersection when his car first entered the intersection?

"A. About in the middle, I imagine, about in the middle of the intersection."

The trial court and the Court of Appeal concluded that Theunissen was charged in law with seeing what he could have seen, and that if he had seen the Guidry car, he would have seen nothing that would have caused a reasonably prudent man to be-

lieve that Guidry was not going to stop and yield the right-of-way at the intersection. The Court of Appeal found that plaintiff's failure to see the Guidry car did not have a causal connection with the accident. Both courts found that the proximate cause of the accident was attributable to defendant Guidry's negligence, and that any negligence ascribed to plaintiff was not the proximate cause of the accident.

The Court of Appeal rendered its decision on November 5, 1962, the same day this Court rendered a decision in the case of Smith v. Borchers, 243 La. 746, 146 So.2d 793, Rehearing Denied, Dec. 10, 1962.

Relators contend that the holdings of the trial court and the Court of Appeal in the instant case are contrary to the holding of this Court in Smith v. Borchers; and, that the standards set forth in Smith v. Borchers require a dismissal of Theunissen's demands at his cost. They state that there are really three principal issues to be decided herein:

"(1) What standard of care is imposed upon a driver who approaches an uncontrolled intersection from the right?

"(2) Was this standard of care complied with by the plaintiff in this case?

"(3) Assuming that this Honorable Court concludes that the plaintiff did not discharge the duties so incumbent upon him as a driver, then the next issue is: Was plaintiff's failure to discharge these duties one of the proximate causes of the collision?"

In Smith v. Borchers, supra, Mrs. Smith was driving in a southerly direction and Borchers was driving in a westerly direction when their automobiles collided at the intersection of Pressburg and Nighthart Streets in New Orleans, Louisiana. The two streets were of equal dignity with no traffic controls, and under the physical facts Mrs. Smith was the favored driver and had the right-of-way to cross the intersection. This Court was concerned only with the question of Mrs. Smith's contributory negligence. In adjudging Mrs. Smith guilty of contributory negligence, we recognized her obligation to operate her vehicle in a prudent manner and to have respect for other motorists. We said that "we first consider the locus in quo upon which there is generally little dispute. We then must consider the testimony of the persons who witnessed the accident, plus the physical facts at the time of and following the accident, in an endeavor to ascertain how the accident occurred. We then must apply the law to the case to determine the responsibility for the accident." Applying the above principles, we found that "the testimony of both drivers and the photographs filed in evidence by defendants are replete in showing that Mrs. Smith was guilty of contributory negligence."

The facts in Smith v. Borchers are not identical with the facts in the instant case.

▬▬ Herein, the allegation of contributory negligence on the part of Theunissen is an issue for our determination.

"Contributory negligence is the doing, or omitting to do, some act or thing which a reasonably careful and prudent person would not have done or omitted, under the circumstances and which, concurring and co-operating with the negligent act of defendant, thereby becomes the real, efficient and proximate cause of the injury. Hence, contributory negligence is simply negligence, and is measured by the same tests, whether statutory or otherwise, as primary negligence.

"No absolute rule as to what constitutes contributory negligence can be promulgated which would be applicable to all cases, because it, like primary negligence, is relative and not absolute, and, being relative it necessarily depends upon the particular circumstances of each case. * * *" Cyclopedia of Automobile Law and Practice, Blashfield, Volume 4, Part 2, Section 2731.

"However, it is the general rule that contributory negligence is a part of the doctrine of proximate cause, that is, to bar a recovery for an injury it must be the proximate cause thereof, and, before an illegal act or omission can be held to be contributory negligence, it must appear that there was a causal connection between such act or omission and the injury complained of. The mere collateral wrongdoing of the injured person cannot of itself defeat a right of recovery for the injury if it did not proximately contribute thereto, and, although one injured in an automobile accident may have been guilty of negligence, yet, if his negligence did not so contribute to his injury as that, but for such negligence on his part, he would not have received the injury, it will not bar a recovery. * * *" Cyclopedia of Automobile Law and Practice, Blashfield, Volume 4, Part 2, Section 2553.

"Contributory negligence is, as the phrase signifies, negligence which contributes to the accident, that is, negligence having causal connection with it and but for which the accident would not have occurred, * * *" White v. State Farm Mutual Auto. Ins. Co., 222 La. 994, 64 So.2d 245. See, D & D Planting Co. v. Employers Casualty Co., 240 La. 684, 124 So.2d 908.

"Contributory negligence is a special defense, and the defendant carries the burden of establishing it by a preponderance of the evidence. * * *". Demerest v. Travelers Insurance Co., 234 La. 1048, 102 So.2d 451. See, Dilworth v. Roberts, La.App., 138 So.2d 453.

Plaintiff's deposition, supra, reflects that he looked to his left and then to his right and did not see anything; that his speed was within fifteen and twenty miles per hour; and, that he was about two car lengths from the intersection when he looked down Howard Street. Plaintiff had the right-of-way to cross the intersection and availed himself of such; there is no evidence that he stopped at the intersection or committed any act that would have indicated that he was going to accord the right-of-way to traffic proceeding on Howard Street. It is true that he did not see the Guidry car; he should have seen it because, according to the physical and evidentiary facts of record, it was within his vision. However, there is no showing that Theunissen could have avoided and prevented the accident had he seen the Guidry car in the position it was and under the conditions it was being driven as stated in Guidry's deposition, supra.

We find no causal connection between Theunissen's omission and the injury of which he complains. The Court of Appeal correctly stated:

"The failure to maintain a proper lookout, although a violation of the law, is not necessarily regarded under our jurisprudence as a proximate or contributing cause of every accident. Plaintiff cannot be denied recovery purely upon the basis that he failed to see what he could have and should have seen, unless it is established that such failure has a causal connection with the accident. Travelers Insurance Co. v. Great American Indemnity Company, La.App. 1 Cir., 113 So.2d 815." See, Noonan v. London Guarantee & Accident Co., La.App., 128 So.2d 918; Gorman v. Indemnity Ins. Co. of North America, La.App., 134 So.2d 602.

Guidry's deposition, supra, reflects that he saw Theunissen approaching; that he was going at a moderate speed and could have stopped before entering the intersection; that he did not stop but entered the intersection and placed his car in Theunissen's path; that he was aware of the Ordinance of the City of Jennings and that he should accord the right-of-way to Theunissen; and, that he violated said City Ordinance.

■ We find that Guidry was guilty of negligence and that his negligence was the proximate cause of the collision.[3]

In Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, we held that the essence of proximate cause in cases involving the violation of statutes is whether the risk and harm encountered fall within the scope of protection of the statute.

We have also held that to impose liability for an injury claimed to be the result of a violation of statute or ordinance, it must appear that compliance therewith would have prevented the injury. Picou v. J. B. Luke's Sons, 204 La. 881, 16 So.2d 466; Martin v. Jonesboro Drug Co., 7 La.App. 262.

We conclude that Guidry's compliance with the Ordinance of the City of Jennings, by according to Theunissen the right-of-way in crossing the intersection, would have prevented the accident and the injuries and damage for which Theunissen seeks recovery.

For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is affirmed. All costs to be paid by relators.

3. "The proximate cause of an injury is the primary or moving cause, or that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened, if the injury be one which might be reasonably anticipated or foreseen as a natural consequence of the wrongful act." Cyclopedia of Automobile Law and Practice, Blashfield, Volume 4, Part 2, Section 2531; Harvey v. Great American Indemnity Co., La.App., 110 So.2d 595.