231 So.2d 700 (1970)
Leon J. KINCHEN
v.
Charles A. HANSBROUGH et al.
No. 7807.
Court of Appeal of Louisiana, First Circuit.
February 2, 1970.
Rehearing Denied March 9, 1970.
*701 James B. Thompson, III, of Dozier & Thompson, Baton Rouge, for appellant.
Daniel R. Atkinson, John Dale Powers, Baton Rouge, for appellees.
Before LOTTINGER, LANDRY, REID, ELLIS and BLANCHE, JJ.
LANDRY, Judge.
Plaintiff appeals the judgment of the trial court rejecting and dismissing his demands for damages for personal injuries, related property damages, and other losses sustained in an intersectional automobile collision. Made defendants were Mrs. Maxine S. Hansbrough, driver of the other vehicle, her husband, Charles A. Hansbrough, and Mr. Hansbrough's insurer, United States Fidelity and Guaranty Company. The trial court also rejected the reconventional demands of Mr. and Mrs. Hansbrough, all of whom have answered plaintiff's appeal praying for judgment in their favor. We affirm the judgment rejecting the reconventional demands of defendants Hansbroughs. We reverse the judgment dismissing plaintiff's demands and render judgment in favor of plaintiff in the amount hereinafter set forth.
The accident in question occurred at approximately 4:00 P.M., May 23, 1967, at the intersection of Morning Glory, a north-south two lane roadway, and Stanford Avenue, an east-west four lane street which was under improvement construction at the time. The crucial issue is whether plaintiff is to be charged with negligence in traveling on Stanford (which normally enjoys right of way by municipal ordinance) by virtue of his using said roadway in disobedience of "street closed signs" erected to prevent use of the street to through traffic during construction thereon.
The testimony of W. O. Bergeron, contractor, shows that Stanford was under *702 construction from L.S.U. Avenue to Perkins Road, the work being approximately 80% Complete. The four lanes of Stanford were finished but the curbing and intersections were being worked on. Stanford was not open but local traffic was permitted its use. There were "road closed" signs and barricades at Stanford's intersection with both L.S.U. Avenue and Perkins Road. A barricade and "road closed" sign were in place in the right westbound lane of Stanford just west of the intersection of Stanford and Morning Glory, which sign would be a warning to motorists traveling westerly on Stanford. At the intersection in question all four lanes of Stanford were completed. There had been a "stop" sign at the southeast corner of Stanford and Morning Glory, requiring northbound motorists on the latter street to yield the right of way. The sign was down and lying in the ditch on the date of the accident. A similar sign was in place at the northwest corner of the intersection. At the juncture of Stanford and L.S.U. Avenue, to the west of the scene of the accident, a bridge connected the two streets, normally affording westerly egress from Stanford. At the time of the accident the bridge was not open to traffic. Between the Studio Arms Apartments, which are situated on the south side of Stanford near L.S.U. Avenue, and Morning Glory there were six intersection north-south streets. Not all of these access roads would afford egress from Stanford because Bergeron was in the process of joining the pavement on these access roads to the completed lanes on Stanford. Mr. Bergeron was also aware that considerable traffic was using Stanford at the time of the accident.
Plaintiff's testimony is to the effect he resided in the Studio Arms Apartments on Stanford Avenue. He left his residence and proceeded on Stanford traveling in the inside eastbound lane at a speed of 30-35 miles per hour. He was unaware whether or not any of the access roads between his residence and Morning Glory were open so that he could egress from Stanford before reaching Morning Glory. He knew the bridge at L.S.U. Avenue was not open so that he could not exit from Stanford by that route. Plaintiff saw no signs facing westerly on Stanford indicating the road was closed but there were such signs facing easterly. He was aware, however, that the road was under construction. Plaintiff also stated that as he traveled easterly, he noted a car proceeding northerly on Morning Glory. Plaintiff assumed the other motorist would stop as Stanford was the superior street. As a precautionary measure, plaintiff removed his foot from his accelerator. Upon realizing the other motorist would not stop, plaintiff swerved to his left and applied his brakes. Nevertheless defendant's vehicle struck the right front of plaintiff's car. According to plaintiff there were no vehicles parked near the intersection at the time of the collision. One or two trucks stopped near the intersection after the accident occurred.
Mrs. Hansbrough's testimony concedes she knew there was normally a stop sign requiring her to yield right of way to traffic on Stanford. She asserted she was proceeding north on Morning Glory intending to enter Stanford. She was aware traffic was using Stanford. She admitted she slowed down at the intersection but did not stop. She maintained one or two trucks were parked at the intersection, blocking her view to the west. In essence her testimony is that she did not see plaintiff's vehicle until the collision was imminent. Mrs. Hansbrough admitted she lived in the neighborhood and was thoroughly familiar with the fact that Stanford was under construction. She stated her destination was the L.S.U. Campus and that she had traveled easterly on a street parallel to Stanford to reach Morning Glory because Hyacinth, an intervening street, was closed on the south side of Stanford. Later, however, she contradicted this statement. She also stated that on the day of the accident Gladiola Street, which was between the Studio Arms Apartments and Morning Glory, was closed to traffic on the south of Stanford.
*703 Hennessey Joseph Goudeau, Jr., City Policeman, investigated the accident shortly after its occurrence. He found that defendant's vehicle left 38 feet of skid marks before the point of impact and 16 feet afterwards. He measured 26 feet of skid marks by plaintiff's car prior to the collision spot and 32 feet beyond. He estimated the speed of both vehicles at 25 miles per hour at the time of collision. Officer Goudeau noted the stop sign on the south side of Stanford was lying in the ditch. Looking westerly along Stanford, he saw no signs or barricades in the eastbound lanes of Stanford. Officer Goudeau observed light traffic on Stanford both before and after the accident. He also stated that a city ordinance declares Stanford superior to Morning Glory.
Mr. Hansbrough testified he visited the scene of the accident at about 6:00 P.M. on the date of its occurrence. He noted the stop sign on the south side of Stanford was down. He also noted a barricade blocking the east lanes of Stanford at the intersection of Stanford and Hyacinth, which barricade he had previously noted on going to his wife's assistance shortly after the accident happened. On his latter visit, he also noted that one could exit from Stanford onto L.S.U. Avenue by driving around a barricade and traveling upon the edge of private premises at the juncture of these two streets.
James E. Gore, Used Car Manager for an automobile dealer, testified that a car involved in an accident suffers a depreciation in value despite restoration to its former condition. He also stated that before the accident he had been negotiating with plaintiff for a trade and had offered plaintiff $2,400.00 for his car. After the accident, even though plaintiff's vehicle was repaired, Gore could only offer $2,100.00 inasmuch as the accident rendered the vehicle less valuable. The trial court declined to admit Gore's evidence as to the alleged depreciated value of plaintiff's car. This evidence, however, appears under a proffer of testimony.
Plaintiff maintains the trial court erred in holding plaintiff guilty of any negligence whatsoever, failing to hold Mrs. Hansbrough solely responsible for the accident, and refusing to admit Gore's testimony as to the alleged depreciated value of plaintiff's automobile. Plaintiffs in reconvention assert the lower court erred in finding Mrs. Hansbrough guilty of negligence and denying her claims, erroneously applying the law applicable to a driver lawfully using a roadway as opposed to another motorist unlawfully using a "closed" street, and alternatively, failing to apply the doctrine of last clear chance in favor of plaintiffs in reconvention.
The duty of care imposed on a motorist approaching an intersection at which a stop sign has been removed has been set forth in Fontenot v. Hudak, La.App., 153 So.2d 120. In the cited authority, plaintiff, aware he was on a favored street, was proceeding northerly. Defendant was traveling westerly on a cross street normally required by a stop sign to yield the right of way. Defendant's view of northbound traffic was partially impaired by a building to his left. Plaintiff observed defendant's vehicle but assumed defendant would stop. Defendant did not see plaintiff in time to avoid a collision. In resolving the controversy, the court relied upon the following citation from 74 A.L.R.2d 245, 246, in holding defendant negligent in not maintaining a proper lookout:
"`Where the boulevard, through street, or arterial highway has been properly designated and appropriate signs have been erected, it ordinarily has been held that the preferred status of the highway is not lost merely because a stop sign is misplaced, improperly removed, destroyed, or obliterated. But removal of the sign by municipal or state authorities has been held to destroy the preferred status of the arterial highway.
`The rule that a motorist driving on an arterial or preferred road protected by stop signs is entitled to assume that the *704 driver of a vehicle on an intersecting servient street will obey the law and stop or yield the right of way has been held not rendered inapplicable because a stop sign which ordinarily should face the motorist on the side street has been misplaced, destroyed or improperly removed. But the right to rely on the assumption may be lost where the driver on the arterial road is not himself exercising due care while approaching or crossing the intersection, and motorists upon arterial highways will be held liable, of course, for collisions resulting from their failure to exercise due care toward traffic on the intersecting road.'"
We note that Fontenot v. Hudak, above, is analogous to the instant matter in all save two respects: (1) In the cited case it does not appear who removed the stop sign. In the case at hand the sign had been removed by municipal authority, and (2) In the Fontenot case the defendant on the inferior street had no knowledge as to which street prevailed. In this case Mrs. Hansbrough was fully aware of Stanford's superiority. She should have been even more diligent knowing that Stanford had been widened to four lanes.
The trial court evidently concluded Mrs. Hansbrough was guilty of negligence proximately causing the accident. In this determination we concur. By her own testimony Mrs. Hansbrough did not stop at the intersection, notwithstanding her testimony her view to the west was blocked. Moreover, on the testimony of Officer Goudeau regarding the skid marks left by defendant's vehicle, it would appear that she reduced her speed very slightly before entering the intersection. If the parked trucks impeded her view as she stated, this condition should have prompted greater diligence on her part as regards both the speed at which she entered the crossing and the degree of lookout exercised.
Nor do we find that the preferential status of Stanford Avenue was affected by the fact that the stop sign facing northbound motorists on Morning Glory had been removed by the municipal authorities. Considering Mrs. Hansbrough admitted familiarity with the intersection and her awareness of Stanford's superiority as a public street, she must, in legal contemplation, be held to have failed to yield the right of way to traffic on a favored thoroughfare.
We now consider whether plaintiff's presence on Stanford constitutes contributory negligence per se and, if so, what are the legal consequences thereof. LSA-R.S. 32:237 provides:
"A. No one shall in any way tamper with, move, damage, or destroy any barricade, signs or signals placed upon any highway by the department or by any contractor or subcontractor doing highway construction or repair work under or by authority of the department, nor shall any person disobey the instructions, signals, warnings, or marking of any warning signs, signals, or barricades so placed upon any highway under construction or being repaired, unless at the time otherwise directed by a police officer.
B. Persons violating this Section shall be prima facie at fault and responsible for any damage to persons or property resulting from the said violation. Nothing contained in this Section shall be construed to affect the liability of any other persons for failure to properly maintain warnings and markings of construction work."
It is undisputed that local traffic was permitted to use Stanford at the time of the accident and that plaintiff resided in an apartment complex on that street. It is equally certain that both plaintiff and Mrs. Hansbrough were aware local residents were using Stanford in going to and from their homes. Since plaintiff was within the class of persons authorized to use the street his presence thereon, notwithstanding the road closed signs and barricades, does not constitute a violation of LSA-R. *705 S. 32:237. It follows that the implication of negligence resulting from a violation of LSA-R.S. 32:237 is not attributable to plaintiff under the circumstances of this case. We also find that Mrs. Hansbrough, being thoroughly aware local residents were using Stanford, is charged with the duty of anticipating the possibility of encountering a vehicle proceeding easterly along Stanford as she attempted to cross at Morning Glory.
Conceding, for argument's sake, plaintiff was in violation of the statute, under the circumstances, the statute makes him only prima facie negligent. We find here that plaintiff has successfully rebutted any inference of negligence attributable to him because of negligence attributable to the circumstances. He was traveling at a reasonable rate of speed and maintaining a proper lookout. He observed defendant approaching the intersection and took the precaution of removing his foot from his accelerator. He noted that defendant was apparently going to concede him the right of way and then continued ahead. When he realized defendant would enter the intersection he immediately applied his brakes and attempted to swerve to his left. We find no breach of duty on plaintiff's part.
Again, assuming plaintiff were held to have breached a statutory duty herein, such eventuality would not bar his recovery unless it constituted a proximate cause of the accident. Theunissen v. Guidry, 244 La. 631, 153 So.2d 869. Additionally, Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298, is authority for the rule that mere violation of a statute does not per se constitute a proximate cause of an accident. In the cited case, defendant's truck was stopped partially in the right lane of a four lane highway. Plaintiff's truck, leased to a third party, crashed into the rear of the parked vehicle. Defendant's driver was charged with negligence in violating LSA-R.S. 32:241, the Highway Clearance Statute and also LSA-R.S. 32:422, a Highway Warning Statute. The Supreme Court held defendant driver's actions negligence per se. The Court also held defendant driver's negligence contributed substantially to the occurrence of the accident and was therefore a cause in fact thereof. The court then considered whether the negligence of the Dixie truck driver was an intervening cause precluding defendant's liability. In resolving the issue of proximate cause thus presented, the Court noted:
"The essence of the present inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the statute. It is a hazard problem. Specifically, it involves a determination of whether the statutory duty of displaying signal flags and responsibility for protecting traffic were designed, at least in part, to afford protection to the class of claimants of which plaintiff is a member from the hazard of confused or inattentive drivers colliding with stationary vehicles on the highway.
* * * * * *
"In 38 Am.Jur., Negligence, § 167, p. 841, the rule is succinctly stated as follows:
`* * * The general principle is that the violation of a statute or ordinance is not rendered remote as the cause of an injury by the intervention of another agency if the occurrence of the accident, in the manner in which it happened, was the very thing which the statute or ordinance was intended to prevent.'
"In a scholarly article entitled `Proximate Cause in Louisiana' by Jesse D. McDonald, 16 Louisiana Law Review 391, the principle is stated as follows:
`* * * Since the law never gives absolute protection to any interest, recovery will be allowed only if the rule of law on which plaintiff relies includes within its limits protection *706 against the particular risk that plaintiff's interests encountered. This determination of the particular risks to plaintiff that fall within the ambit of protection of the rule of law on which plaintiff relies is the determination of the issue of proximate cause.'"
After observing the foregoing in Dixie, above, the Court then concluded:
"The objective of the statutory provisions violated in the instant case was to protect against the likelihood that an oncoming motorist, whether cautious, confused or inattentive, would fail to timely perceive the vehicle or that it was stationary and become involved in an accident. The law was designed to protect the plaintiff (and any member of its class) against such an accident as occurred in this case."
We understand the rationale of Dixie, above, to be that violation of a statutory duty of care does not per se render the offending party guilty of negligence constituting a cause in fact amounting to a proximate cause of the accident. Rather, the test of negligence, as a proximate cause of the accident in such instances, is a question of hazard analysis. Stated otherwise, the inquiry is whether the risk and harm encountered by plaintiff falls within the scope of the protection intended by the statute. In other words, whether the accident is of a type the statute intended to prevent.
We conclude LSA-R.S. 32:237 was not designed and intended to protect against intersectional collisions of the type involved in this instance. It appears the statute is meant to protect against the risks of motorists interfering with or damaging construction equipment, impeding or injuring construction workers, damaging newly completed roadway surfaces and similar perils. We find the statute did not intend to prevent or protect against the kind of risk involved in this instance. Plaintiff's negligence, therefore, was not a proximate cause of the accident and does not bar his recovery. Theunissen v. Guidry, 244 La. 631, 153 So.2d 869.
It is stipulated that plaintiff incurred medical and hospital expense aggregating $159.86. He is entitled to recover that amount. It is also stipulated that plaintiff incurred car rental expense, pending repair of his automobile, in the sum of $659.72. Defendants maintain this latter amount is not a recoverable item of damages. Further stipulation shows plaintiff's collision policy contained a $100.00 deductible clause. Plaintiff is entitled to judgment in that amount.
Our law establishes that an owner of a vehicle for business purposes is entitled to recover for the loss of its use, for a reasonable time, where business losses result therefrom. Dixie Highway Express v. C. C. Galbraith & Son, La.App., 61 So.2d 218. It is undisputed that plaintiff in an independent insurance salesman whose automobile is vital to the conduct of his business. It also appears the rental expense incurred herein was reasonable and proper. Plaintiff is entitled to recover this item of damages in the sum of $659.72.
Considering plaintiff's claim for $300.00 depreciation in the value of his vehicle, our own jurisprudence is well settled that in a proper case depreciation is a recoverable item. See, for example, Foil v. Burge, La.App., 196 So.2d 567, and cases cited therein. See also Baillio v. Western Casualty and Surety Company, 189 So.2d 605, and authorities therein cited.
The same rule obtains in other jurisdictions. See, for example, Larson v. Long, 74 Colo. 152, 219 P. 1066; Madden v. Nippon Auto Co. et al., 119 Wash. 618, 206 P. 569; Brown et al. v. Rowland et al., 40 Ca.App.2d Supp. 825, 104 P.2d 138; United States Fidelity & Guaranty Co. v. P. & F. Motor Express, Inc., 220 N.C. 721, 18 S.E. 2d 166. It follows that the trial court erred in excluding the evidence offered by plaintiff to establish this item of damages.
*707 We find the evidence amply sustains Mr. Gore's qualifications as an expert in the field of automobile appraisals. His uncontradicted testimony is that the value of plaintiff's automobile has depreciated from $200.00 to $300.00, depending upon the used car market. He also testified that prior to the accident he had offered plaintiff $2,400.00 for his automobile on a trade and that following the accident and the automobile's repair, he had reduced his offer to the sum of $2,100.00. It is not shown whether or not plaintiff had traded the car. Under the circumstances, we find that an award of $200.00 for depreciation would do justice between the parties.
Following the accident plaintiff was hospitalized overnight. X-rays were ordered via telephone by Dr. Joe Moreland who saw plaintiff in his office the following day. The examination revealed tenderness and swelling of plaintiff's right wrist and some muscle spasm in the small of his back. Dr. Moreland prescribed drugs for pain relief, suggested heat applications to plaintiff's back, recommended certain exercises and advised consultation with a physical therapist. Plaintiff returned to Dr. Moreland on June 23, 1967, complaining of back pain upon physical exertion. On a subsequent visit Dr. Moreland referred plaintiff to Dr. Smith, an Orthopedic Surgeon, but plaintiff consulted Dr. J. Willard Dowell, also an Orthopedist.
On August 21, 1967, Dr. Dowell examined plaintiff who complained of back pain which was aggravated by back bending or lifting. Examination revealed tenderness over the lumbosacral joint and sacrum. X-rays showed slight narrowing of the posterior aspect of the lumbosacral disc space. Dr. Dowell also noted limited motion of flexion in plaintiff's back. In Dr. Dowell's opinion, plaintiff was suffering from a degenerative disc disease that was probably aggravated by the accident. It was his further opinion that the condition found might not have developed at all but for the accident.
In essence plaintiff testified he sustained a bruised wrist and pain in the low back because of the accident. He added he was a sports enthusiast but could no longer participate in such activities because of persistent back pain. Plaintiff explained that at the time of trial he was still undergoing therapy.
A tort feasor takes his victim as he finds him. Milano v. Saia, La.App., 205 So.2d 841; Rumby v. Cooperative Cab Co., La.App., 207 So.2d 855. The fact that plaintiff was afflicted with a latent back defect is irrelevant. The record discloses the condition was activated by the accident. Although neither plaintiff's wrist nor back injury appears permanent, his back pain persisted over a year and a half following its onset. We are of the view an award of $3,000.00 will amply compensate plaintiff for his physical injuries.
It is ordered, adjudged and decreed that the judgment of the trial court rejecting plaintiff's demands is reversed and set aside and judgment rendered herein in favor of plaintiff Leon J. Kinchen and against defendants, Charles A. Hansbrough, Maxine S. Hansbrough and United States Fidelity and Guaranty Company, in the sum of $4,119.58, together with legal interest thereon at the rate of five (5%) per cent per annum, from date of judicial demand, until paid.
It is further ordered, adjudged and decreed the judgment of the trial court rejecting the reconventional demands of defendants, Charles A. Hansbrough, Maxine S. Hansbrough and United States Fidelity and Guaranty Company, is affirmed. All costs of those proceedings to be paid by defendants in the main demand.
Amended and rendered.
STRTAIN, J., recused.
ELLIS, Judge (dissenting).
I am in full agreement with the finding of the majority that Mrs. Hansbrough was *708 guilty of negligence which was a proximate cause of the accident. However, I cannot agree that Mr. Kinchen is without fault.
Stanford Avenue was closed for construction at the time of the accident, was so posted, and Mr. Kinchen was aware of that fact. Under those circumstances, I find it inconsistent, to say the least, to hold that Stanford was a through street, and that Mr. Kinchen could rely on having the right of way.
In my opinion, Stanford lost whatever dignity it had as a right of way street under the Baton Rouge Ordinance when it was closed for construction. Mr. Kinchen had no more right to rely on having the right of way than Mrs. Hansbrough could rely on the absence of the stop sign on Morning Glory Street.
An unusual situation existed in that area because of the construction project, and both parties were aware of it. Under the law, as I interpret it, each of them failed to observe the standard of care required by them under the circumstances.
As for Mr. Kinchen, under the express provisions of R.S. 32:237(B), he rendered himself prima facie at fault. I am aware that the contractor permitted local traffic on Stanford Avenue so that people living thereon could reach their homes, but this permissiveness cannot entirely excuse Kinchen's disregard of the law. Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (1968).
Mr. Kinchen saw Mrs. Hansbrough approaching from his right on Morning Glory, but assumed that she would stop. Lacking the right of way, he had no right to make this assumption, and in failing to guard against the ventuality that Mrs. Hansbrough might enter Stanford Avenue without stopping, he was negligent and his negligence was a proximate cause of the accident.
I dissent.
REID, J., dissents for the reasons assigned by ELLIS, J.
ELLIS, J., is of the opinion that a rehearing should be granted. SARTAIN, J., takes no part.