KNOLL, Judge,
dissenting.
For the following reasons I respectfully disagree with the majority opinion, finding instead that United Gas was negligent and that Buckbee's fault did not bar his recovery.
The majority misfocuses its attention on the fact that United Gas was not the owner of the heater at the time of the explosion. In so doing, the majority overlooks the crucial fact that United Gas was the owner of the heater when it contracted with Watt and agreed to monitor the proper cleaning of the heater.
The initial inquiry in any determination of actionable negligence on the part of the defendant is whether any causal relationship existed between the harmed plaintiff and the defendant’s allegedly negligent conduct. Zeagler v. Town of Jena, 503 So.2d 1137 (La.App. 3rd Cir.1987). To be a cause-in-fact of an injury, such cause must play a significant and substantial role in causing the injury, and not a remote or slight part. Lastrapes v. South Cent. Bell Tel. Co., 473 So.2d 115 (La.App. 3rd Cir.1985), writ denied, 477 So.2d 708 (La.1985).
In the present case, it is undisputed that a kerosene-like substance was found in the heater, and the evidence preponderates that it was this substance which ignited when Buckbee and Vincent applied heat to the plug. United Gas personnel testified that it used liquid hydrocarbons, which would have included kerosene or a kerosene-like substance, in the heater in question as part of its gas processing operation *88 in Carthage. They further testified if liquid hydrocarbons were present at the time of the explosion, then the heater was not cleaned. It is also undisputed that no one introduced other liquid hydrocarbons into the heater at anytime after United Gas transferred ownership to Watt. Therefore, I find, for reasons stated infra, that United Gas’ failure to properly clean the heater was a cause-in-fact of Buckbee’s injuries and death.
The next inquiry is whether United Gas owed a legal duty and whether the duty encompassed the particular risk which caused Buckbee’s injuries and death.
Those who use or handle agencies, substances, or instrumentalities such as combustibles, which might endanger persons or property are held to a high degree of care. Waters v. Southern Farm Bureau Casualty Ins. Co., 212 So.2d 487 (La.App. 3rd Cir.1968), writ refused, 252 La. 900, 214 So.2d 720 (1968); Jones v. Robbins, 289 So.2d 104 (La.1974); Butler v. Atwood, 420 So.2d 742 (La.App. 4th Cir.1982). Everyone is under an obligation, whether his role be that of an agent or owner, of not allowing things subject to his control to injure another, either because of active or passive negligence. Miller v. Lambert, 380 So.2d 695 (La.App. 4th Cir.1980). Furthermore, whenever property in one’s control becomes dangerous to third persons, there is a duty to act affirmatively, and should there be nonperformance, resulting in injury to third persons, the law imposes liability on the part of the agent or owner. Id.; Washington v. T. Smith & Son, 68 So.2d 337 (La.App.Orl.1953).
In the case sub judice, I find that United Gas owed a duty to properly clean its heater which processed highly combustible hydrocarbons. United Gas’ contract with Watt, as illuminated by the testimony of its administrative personnel, underscored the duty to clean the heater, i.e., United Gas recognized the danger that uncleaned heaters posed to its plant operation and personnel at the Carthage facility. Contrary to the majority’s assertion that “United Gas did not sell the heater to Watt for its continued use”, the record clearly shows that United Gas further understood that the heaters could have been used again by someone else in the processing of hydrocarbons, and that personnel other than its own would be required to perform work on the heaters to make them operational. On this basis, I find that United Gas’ duty encompassed the particular risk which caused Buckbee’s injuries and death.
The next issue is whether United Gas breached its legal duty. United Gas contends that it fulfilled any duty it may have by stipulating in its contract with Watt, the first purchaser, that Watt’s personnel were required to properly clean all pressure containing vessels at the Carthage plant before removal operations began. I find no merit to United Gas’ contention.
In addition to the contractual provision that required Watt to properly clean the pressure containing vessels, e.g., the heater at issue, United Gas obligated itself to monitor Watt’s compliance. In particular, the contract between United Gas and Watt specified, “A United inspector will assist in monitoring these vessels before any dismantling is begun.”
The evidence establishes that none of United Gas’ employees stationed at Carthage were assigned as “Inspector” for Watt’s removal operations. Moreover, an interoffice memorandum from United Gas, generated after the explosion and fire which killed Buckbee, states unequivocally, “The physical condition of the equipment to be removed was not checked by United’s employees”.
The record evidence shows that Watt used high pressure hoses provided by United Gas to flush out the heaters. Glen A. Sanders, a United Gas witness, testified that the purging of a vessel with water will not necessarily remove the heavier combustible liquids, and that the likelihood of an accident is greatly lessened if the vessel is rigorously cleaned. J.H. Echterhoff, United Gas' signatory to the Watt contract, testified that hydrocarbons are not solvent in cold water, and that the flushing of a vessel with water will “not leave substantial amounts of hydrocarbon in the system.” The evidence shows that despite *89 this knowledge, United Gas did not require Watt to utilize steam cleaning or a more rigorous method of removing the highly combustible liquids from the heater it employed in its processing of hydrocarbons through the years. As a result, volatile liquid hydrocarbons were left in the intricate maze of heater coils.
George Green, Jr., an expert in safety engineering, testified on behalf of the Buckbees. He testified that it was the standard in the industry to clean and check a heater when it is removed from service. He opined that simply flushing the heater with a hose, as done by Watt, would not have effectively removed the volatile liquids and gases from the heater.
Considering the totality of the record evidence, I find that United Gas breached the legal duty it owed to Buckbee. It failed to monitor whether Watt properly cleaned the heater, satisfying itself that Watt utilized a cleaning method sufficient to safely remove the heaters from its facility — a method, by the admission of its own personnel, which would not necessarily remove the heavier liquid hydrocarbons.
For these reasons, I find United Gas negligent and, therefore, liable for Buckbee’s injuries and death.
I also disagree with the majority’s conclusion that Buckbee was contributorily negligent and assumed the risk. I find that in reaching these conclusions the majority fails to assess Buckbee’s actions in light of the totality of circumstances presented.
A plaintiff’s contributory negligence is a relative, not an absolute, determination. Buckbee v. United Gas, 561 So.2d 76 (La.1990). Contributory negligence must be judged objectively in each particular case according to the conduct expected of a reasonable man under like circumstances. Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981); Bass v. Aetna Ins. Co., 370 So.2d 511 (La.1979); Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La.1976); Theunissen v. Guidry, 244 La. 631, 153 So.2d 869 (1963). Moreover, a party is only required to use reasonable caution, and his conduct is not negligent if, “by a common sense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances.” Dupas v. City of New Orleans, 354 So.2d 1311, 1313 (La.1978) (quoting Smolinski v. Taulli, 276 So.2d 286, 290 [La.1973]). Contributory negligence is an affirmative defense, and the party relying upon it has the burden of proving it. Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983).
To determine the question of contributory negligence, Buckbee’s actions must be viewed in light of the evidence adduced trial. In that regard, attention must be focused on Buckbee’s character, his work habits, the factual background surrounding this heater, Buckbee’s instructions from his supervisors as well as the circumstances immediately preceding the accident.
Lake Charles Refining (LCR) employed Buckbee as its maintenance foreman. On the day of the explosion and fire, he was assigned the job of reassembling and installing a secondhand box heater which LCR purchased from Watt. The heater was previously owned by United Gas at its Carthage, Texas plant. When the heater was used in Carthage, United Gas circulated absorbing oil, a kerosene-like substance, through the coils to absorb various hydrocarbons from the natural gas.
Joseph Chamberlin, a co-owner of LCR, and Blane Sheley, the plant superintendent, testified that the accepted safe practice was to remove the first plug from this type heater “cold”, i.e., using chisels, hammers, and wrenches, because the content of the coils, if any, was unknown and may have been highly flammable. The record preponderates that Buckbee was aware of this safe procedure. The record further shows that Chamberlin instructed Buckbee “probably a month before and probably a day before” the explosion and fire that Buck-bee should remove the first plug of the heater cold. Sheley also testified that on the evening prior to the explosion he and Buckbee discussed the procedure for removing the first plug cold with Walter Hanson, a trainee who was not involved in the accident.
*90 The record shows that on the morning of the accident, Buckbee and Vincent ascended a scaffold 10 to 12 feet high, and worked for at least two hours with wrenches and sledge hammers, trying to remove the heater plug cold. Since the cold method was not loosening the plug, Vincent testified that just before Buckbee descended the scaffold, Buckbee stated that “he was going to the office to obtain permission to apply heat to the plug to remove it.” At this point, the evidence shows that Buckbee left the scaffold, went into the plant office, remained there for approximately 10 minutes, returned, and remounted the scaffold. Buckbee and Vincent then used an acetylene torch to loosen the plug. Shortly thereafter, the heat of the acetylene torch apparently ignited the absorbing oil in the heater coil, caused an explosion, and expulsed the plug. Fire immediately engulfed Buckbee and Vincent.
The record shows that United Gas’ processing plant at Carthage, at least that portion which utilized the heater in question, was shut down in 1975 or 1976. The evidence further shows that in a written contract dated December 8, 1976, United Gas sold the heater to Watt. As part of this contract, Watt agreed to remove the equipment from the United Gas facility, and spent at least 18 months removing the various pieces sold.
Chamberlin testified that he heard that Watt purchased the heaters for resale, and went personally to Carthage to view the heaters prior to making a final decision to buy them. Chamberlin stated that at the time of his visit, the heaters had already been cut with welding torches from the United Gas plant which was still in operation. After the sale from Watt to LCR, a crew of LCR’s employees was deployed to Carthage to dismantle the heaters for transportation to Lake Charles. At that time, a cutting torch was used in the dismantling process. The heater at issue then sat idle at LCR for several years and was not yet in operation at the time of the explosion and fire which killed Buckbee.
Although Chamberlin testified that Buck-bee had a short temper, he was quick to add that Buckbee was an excellent foreman, that he was conscientious, and that he was a safe worker. He referred to Buck-bee as a methodical worker, stating that Buckbee got the job done, and he was not the fastest worker, and further said, “If Buckbee hadn’t thought it was safe, I’m sure he wouldn’t have lit the torch.”
Sheley, Buckbee’s superintendent at the time of the accident and a close friend, opined that when a furnace has been exposed to the atmosphere for a long time, like the heater in question, it was not necessary to reclean it before removing the plug. He also said that because of the long period of inoperation, he also would not have used a sniffer (a mining device used for the detection of volatile hydrocarbons) before pulling the plugs from the heater. Like Chamberlin, Sheley testified that Buckbee was a “good and safe worker”.
United Gas did not present any evidence of an alternative method which Buckbee could have used once the cold method failed. Green, the Buckbees’ safety expert and the only safety expert to testify, stated that there was no absolutely safe way to remove the plug with volatile hydrocarbons present. He opined that using saws, cutting wheels, sledgehammers, and chisels would produce sparks and heat which could cause an explosion and fire. This testimony was unrefuted.
Considering Vincent’s proffered testimony in light of the unrefuted evidence that Buckbee spent hours attempting to remove the plug cold, that he was a safe worker, and that he sought permission from his supervisors to use heat to remove the plug from a heater “which certainly had been dismantled, which had sat idle for over two years, and which showed signs of having been previously cut with torches”, I find that Buckbee’s use of heat to remove the plug was exercised with the care of a reasonable, prudent man under like circumstances. Therefore, I find that United Gas, which had a greater burden since it knew what the heater was used for at its facility and, despite its knowledge, failed to properly clean it, did not prove by a preponder- *91 anee of the evidence that Buckbee was contributorily negligent.
The final question is whether Buckbee assumed the risk of injury.
In Dorry v. LaFleur, 399 So.2d 559 (La.1981), the Louisiana Supreme Court adopted the Restatement of Torts’ explanation of assumption of risk in Section 496D, Comment b, as follows:
“ ‘The basis of assumption of risk is the plaintiff’s consent to accept the risk and look out for himself. Therefore, he will not be found, in the absence of an express agreement which is clearly so to be construed, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character and extent -which make it unreasonable. Thus the condition of premises upon which he may enter may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.’ ”
Assumption of risk involves a question of fact in each case determined by an evaluation of the plaintiff’s subjective knowledge. Thompson v. Tuggle, 486 So.2d 144 (La.App. 3rd Cir.1986), writ denied, 489 So.2d 919 (La.1986). A subjective standard of what the particular plaintiff in fact sees, knows, understands and appreciates is applicable. Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir.1987), writs denied, 508 So.2d 71, 74 (La.1987). The defendant pleading the defense of assumption of risk bears the burden of proving it. Id.
Since the inquiry is subjective, the record must be examined to determine if Buckbee knew of the risk and appreciated its unreasonable character. See Rozell v. Louisiana Animal Breeders Co-Op., 496 So.2d 275 (La.1986). Considering Buckbee’s experience as a welder in or around oil refineries in excess of ten years, this is convincing that he recognized a risk in removing the first plug with heat. Nevertheless, in light of the evidence that two other similar heaters had been placed into operation without difficulty, that this particular heater had been cut with acetylene torches pri- or to this operation, and that the heater sat in the atmosphere disconnected from any combustible source in excess of two years, I find that Buckbee believed the risk of an explosion was not an unreasonable risk. Therefore, I find that Buckbee did not assume the risk.
For these reasons, I would find United Gas liable and award damages in favor of Buckbee’s wife and son.