378 So.2d 928 (1979)
STATE of Louisiana
v.
James COLLINS.
No. 64659.
Supreme Court of Louisiana.
December 13, 1979.
Rehearing Denied January 28, 1980.
Dennis R. Whalen and John N. Samaha, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Freddie Pitcher, Jr., Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
DENNIS, Justice.[*]
This criminal appeal hinges principally on whether probable cause existed for the arrest of the defendant, James Collins. The trial court denied Collins' motion to suppress evidence produced by his arrest, finding that the arrest was lawful. Collins was subsequently convicted by a jury of first degree murder, La.R.S. 14:30, and sentenced to life imprisonment at hard labor, without benefit of parole, probation or suspension *929 of sentence, following a capital sentencing proceeding. La.C.Cr.P. art. 905, et seq. We affirm the defendant's conviction and sentence. Probable cause existed to arrest Collins for the murder of a young woman whose body was discovered behind a night club-restaurant several hours after she had stepped outside the building with Collins to smoke marijuana, leaving her coat, purse and partially eaten hamburger at a table with her mother.
The body of seventeen year old Karen Jackson was discovered at about 9:30 a. m. on November 20, 1976 in bushes behind the Five Crown Social Club, a restaurant and bar in Baton Rouge. She had been slashed from her neck to her pubic area, stabbed near the base of her neck, and beaten on her head. Blood on a wall and concrete slab at the back of the club, with other signs, indicated that the young woman had been mortally wounded near the building and dragged into the bushes. She was found bra-less, lying on her back wearing a pair of unbuttoned, unzipped jeans, pulled below her pubic area, with a green sweater wrapped around her neck. Rigor mortis had set in and ants were crawling over her body, indicating that death had occurred several hours earlier.
The Baton Rouge police officers who came to investigate the crime quickly reconstructed the events of the previous evening at the night club from information given by some of the persons who were present. Karen Jackson, her mother, Odeal Jackson, and Gloria Francois arrived at the club at about 9:00 p. m. and took a table. Karen's boyfriend, Melvin Heard, who was employed by the club owner as bartender, waiter and sometimes manager, visited with them briefly. He was soon called away, however, and was occupied by his work the rest of the evening. Gloria also left to visit with friends at another table. Shortly thereafter, the defendant, James Collins, invited himself to sit down with Karen and her mother. He remained at their table for most of the next two hours, drinking and talking, while Karen ate a hamburger and danced a couple of times. During this time Collins indicated to Karen's mother that he could obtain some marijuana for them. At about 11:30 p. m. Karen told Collins that, although her mother was not interested, she would accept his offer. Collins left the table briefly and returned, stating that he had gotten some marijuana from a friend. During his absence, a second hamburger which Karen had ordered arrived. Karen left the hamburger, her coat and her purse at the table with her mother and went outside with Collins. They left by the front door which opened on to a heavily traveled city street. The drizzling rain which had begun earlier, and would continue through the night, was still falling. Karen was never seen alive again by her mother or the other persons at the night club after she left with Collins. Collins did not come back into the club, but when Melvin Heard locked up at 2:00 a. m. he saw Collins in front of the club talking with a man and his daughter.
Based upon what had been told them by Karen's mother and Melvin Heard, and their findings at the scene of the crime, the police officers decided to question James Collins. As they emerged from the Five Crown Social Club, one of the officers, who knew Collins, saw him in front of the B & P Club about one-half block down the street. Collins saw the officers and walked into the B & P Club as if to avoid them. The officers quickly removed Collins from the club, however, and took him to the stationhouse for questioning. At the station, the police discovered blood on his shoe and fingernails. This evidence, together with samples of Collins' own blood and his head and pubic hairs proved to be heavily damaging to his defense at trial.
For purposes of this review, we assume arguendo that Collins is correct in his contentions that he was effectively placed under arrest at the B & P Club before he was taken to the stationhouse. In doing so, we set to one side the prosecution's argument, which has some support in the evidence, that Collins consented to come to police headquarters for questioning because he was in danger, the word having gotten *930 out in the community that he was the killer. Furthermore, we consider it immaterial that the police officers did not inform Collins that he was under arrest until after they reached the stationhouse and that they then purportedly arrested him as a material witness, rather than for the commission of a crime. The constitution requires only that an officer's actions be justified against an objective standard of probable cause; it does not require that the state be penalized for a purely subjective mistake by an officer. State v. Wilkens, 364 So.2d 934 (La. 1978). Accordingly, we assume that James Collins was arrested for the murder of Karen Jackson at the B & P Club, and proceed directly to the decisive, threshold issue of whether the officers had probable cause to arrest Collins at this time.
Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Wilkens, 364 So.2d 934 (La.1978); State v. Johnson, 363 So.2d 684 (La.1978); State v. Marks, 337 So.2d 1177 (La.1976). Although mere suspicion cannot justify an arrest, State v. Thomas, 349 So.2d 270 (La.1977), the officer does not need sufficient proof to convict. State v. Randolph, 337 So.2d 498 (La.1976).
One of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed. When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime. In many cases the police do not know that a crime has been committed. When the arrest or search is made when the police do not know that a crime has been committed, more and better evidence is needed to prove that probable cause exists for the arrest than is the case when the police know a crime has been committed. State v. Johnson, supra.
Applying these principles to the case at bar, we conclude that the facts and circumstances within the police officers' knowledge or of which they had reasonable and trustworthy information, chiefly that Karen Jackson had been killed behind the Five Crown Social Club within a short time after she stepped outside to smoke marijuana with Collins, justified a person of average caution in the belief that Collins had committed, or at least was implicated in, the homicide. Karen was last seen leaving the club with Collins. She apparently intended to go outside only long enough to smoke a joint of marijuana with him, as evidenced by the coat, purse and partially eaten hamburger which she left with her mother. It is likely that she and Collins would have gone behind the club to smoke the marijuana, since it fronted on a heavily traveled city street. She was not in the habit of frequenting any other establishment in the area or of abandoning her mother without notice. Collins was seen in the vicinity of the Five Crown Social Club at about 2:00 a. m., which was shortly after the time that the crime was probably committed. The circumstances pointed to no person other than Collins who could have committed the crime. These facts and circumstances, of course, do not necessarily amount to proof beyond a reasonable doubt that Collins committed or was implicated in the homicide, but we find that the police officers had probable cause to arrest him.
A review of the three other assignments of error which were argued reveals that these contain no reversible error, are governed by well settled rules, and do not call for any novel interpretation or application of the law. Publication of our reasons for decision with respect to them is not warranted. Accordingly, our reasons for finding the other assignments without merit are stated in an unpublished, but publicly recorded, appendix to this opinion.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] The honorable Jesse N. Stone, Jr. participated in this decision as an Associate Justice ad hoc.