397 So.2d 1308 (1981)
STATE of Louisiana
v.
Martin J. NICHOLAS and Lindy Roland.
No. 80KA2346.
Supreme Court of Louisiana.
April 6, 1981.
Rehearing Denied May 18, 1981.
*1310 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns and Thomas Chester, Asst. Dist. Attys., for plaintiff-appellee.
Jasper N. Pharr, Michael Gallagher, Supervising Atty., New Orleans, Marilyn Cohen, Student Practitioner, Loyola Law School Clinic, for defendants-appellants.
GARRISON, Justice ad hoc.[*]
In the early morning hours of October 12, 1978, New Orleans police officers were conducting a surveillance from J.D.'s Bar on Canal Boulevard. This stakeout had been established in response to a series of armed robberies on similar establishments in the area. As a result of the stakeout, the two defendants were apprehended. The apprehension was the result of the police officers' observation of two vehiclesone a brown car and the other a white carrepeatedly passing in front of the barroom which was serving as their observation post.
When the defendants were arrested, in the white car, they were in possession of a pistol, cash, jewelry and other evidence which was introduced at trial to prove that the defendants had robbed another bar, the Privateer Lounge, three days earlier. When the arrest was made of the two subjects (one Cleveland Tate and one John Wricks) in the brown car, which the white car had been following they had in their possession a sawed-off shotgun and pistol. In both instances the described evidence was readily perceivable from outside the car.
At the robbery of the Privateer Lounge, witnesses testified, three men had burst into the bar brandishing weapons, including a sawed-off shotgun, and robbed the cash register, the bartender and five customers. Although the robbers wore red bandanas some of the victims positively identified the *1311 defendants both at pre-trial line-up and at the trial.
The defendants, Martin J. Nicholas and Lindy E. Roland, were charged by Bill of Information with five counts of armed robbery, violations of La. R.S. 14:64.[1] Defendants were tried jointly on four counts before a jury of twelve. The jury found Nicholas guilty of attempted armed robbery on all four counts and Roland guilty as charged on all counts. Roland was sentenced to 35 years on each count and Nicholas 30 years on each count. Their sentences were to run concurrently.[2]

I

THE ARREST OF THE DEFENDANTS
One of the principal issues of this case concerns the motion to suppress evidence which was filed by defendants. At the hearing on the motion to suppress, the following facts were brought forth. Officer Difrisco testified that he had partial descriptions of the suspects prior to the observation of the two automobiles from the stakeout. He further testified that they were believed to be using a large, late model brown car.
Before arriving at J.D.'s Bar, Officer Difrisco had interviewed the bartender of the lounge next door, Smokey's, an establishment which, it was testified, had also been robbed by the suspects a few days before. While in J.D.'s Bar, Detective Rice received a telephone call from the bartender at Smokey's telling him that the men who had robbed Smokey's had just passed. Before and as he spoke on the phone the detective observed a large brown car pass by the bar three times and, after the call, a fourth time. The witness stated that the vehicle was traveling very slowly and that there was no other traffic except for a large white car which appeared to be following the brown one closely, turning as it did, and it too was passing back and forth in front of the barroom with precisely equal regularity. The police officers promptly left J.D.'s and entered their respective unmarked vehicles. As Officer Difrisco headed toward his vehicle he passed Smokey's and, as he did, the bartender of that bar told him that "the white car is with the brown car." The police in their two unmarked units followed the brown and white cars. When the brown car went one way and the white another, one police vehicle followed each.
Officer Difrisco, who followed the white vehicle, testified that he trailed the car for a few blocks and radioed for a marked unit nearby to block the road ahead. The white vehicle, which was said not to have been speeding nor committing any other traffic violation, was then stopped and the occupants, the defendants, were ordered out of the car. Officer Difrisco then testified as follows:
"I asked them to get out of the car, keep their hands where I could see them. I was standing in front of my car in the middle of the street with the blue and white police car of them, (sic) And they got out of the car, put their hands on the top of the car."
When the examination continued, Officer Difrisco stated:
"I patted the subjects down and I was standing on the side of Martin, which was on the passenger side door. And I observed the pistol and red bandana laying on the floor board of the car. I verbally advised the subjects of their rights and of their rights to counsel, that they didn't have to tell me anything. I advised that they were suspects in an armed robbery."
However, upon later cross-examination by defense counsel the witness gave a version of the arrest with some slight variation:
*1312 Q. "Okay. When you looked in there and saw a bandana and the gun, then that's when you advised them of their rights?
A. "I advised them of their rights after I patted them down.
Q. "You advised them of their rights after you patted them down that they were suspects?
A. "Right.
Q. "Okay. Then you went and looked in the car, is that correct?
A. "I looked in the car from where I was standing.
Q. "You looked in the car?
A. "Right.
Q. "You saw the gun on the floor and the bandana?
A. "Yes sir.
Q. "Alright. Then you looked on the seat and saw a coat with some money in it, is that correct?
A. "From the passenger side I could only see a coat and a hat. I walked over to the neutral ground and when I looked in the car from that side, I could see money sticking out of the pocket of the jacket. When I walked to the driver's side from the passenger side which was the neutral ground side of the street.
Q. "When did you notify them that they were under arrest for armed robbery?
A. "When I recovered the property that was described as being taken from a robbery."
This version of the facts indicates that the defendants were arrested when their vehicle was stopped and they were ordered to get out. The officer's later clarification of the arrest here at the suppression hearing is also more consistent with the testimony he gave at the trial wherein he described stopping of the vehicle, ordering the defendants out, making them assume the positions with their hands on the car, and then his viewing the evidence.
The brown car was also stopped, but by Detective Rice, who testified that as he exited his vehicle to apprehend the occupants who had stopped at a traffic sign, a passenger bolted and ran but was apprehended after a chase on foot. The driver of the car also was arrested and from the front seat of that vehicle a pistol, sawed-off shotgun, and other evidence was seized.

II

PROBABLE CAUSE
The arrests in this case were made without benefit of the issuance of an arrest warrant. Consequently, inasmuch as restraint on liberty is clearly involved and inasmuch as it appears that the defendants, once having been stopped and ordered from their car, were not free to leave, the initial point of inquiry in considering the legality of the consequent seizure of evidence is the determination as to whether there existed probable cause to arrest the defendant. In State v. Thomas, 349 So.2d 270, 272 (La. 1977), this court set forth the principles applicable to an arrest without benefit of warrant:
"A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976); State v. Scott, 320 So.2d 538 (La.1975); State v. Terracina, 309 So.2d 271 (La. 1975); State v. Odom, 292 So.2d 189 (La. 1974). Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Marks, 337 So.2d 1177 (La.1976); State v. Randolph, 337 So.2d 498 (La.1976); State v. Gilmore, 323 So.2d 459 (La.1975); State v. Wood, 262 La. 259, 263 So.2d 28 (1972). While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify an arrest. State v. Ranker, supra; State v. Randolph, supra." *1313 The arresting officers in this case were in possession of the following facts: (1) armed robberies had taken place earlier at other bars in the area (including one a few days before); (2) a general description of the suspects and a vehicle used in one of the robberies, the vehicle being described as a large brown car; (3) a statement by an earlier victim (the bartender of Smokey's) that the perpetrators of the earlier robbery were passing in front of J.D.'s Bar; (4) their own observation that the brown car was closely followed by the defendants' white car, had driven by the bar slowly several times at 2:00 a. m. in an area otherwise without traffic and (5) the statement of the earlier victim that the white car "was with" the brown one.
With regard to the arrest made of the defendants in the white car, Officer Difrisco's knowledge of these facts and circumstances appears to satisfy a basic standard for probable cause.
True, the white car had not been described in any statement of any witnesses prior to its being observed when it began its own cruise back and forth in front of J.D.'s. However, the officers had observed the consistent manner in which the defendants' white vehicle shadowed the brown one, following it, driving slowly, turning when the brown car turned and passing the bar four times at 2:00 a. m. This pattern, most suspicious to say the least and hardly harmonious with innocent pursuits, amounted to a degree of consistency which established a relationship on the part of the white car to the brown car, concerning which the stake-out officers had a description at the outset. An especially compelling factor, further supporting the existence of probable cause, was Officer Difrisco's knowledge that other robberies had been committed. As discussed in State v. Collins, 378 So.2d 928 (La.1979):
"One of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed. When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime. In many cases the police do not know that a crime has been committed. When the arrest or search is made when the police do not know that a crime has been committed, more and better evidence is needed to prove that probable cause exists for the arrest than is the case when the police know a crime has been committed. State v. Johnson, supra." 378 So.2d at 930.
Furthermore, the owner of Smokey's had not confined his report to the passing brown car but had indicated generally to Difrisco that the suspects were in the process of driving by again.
Given the officer's awareness of the earlier crimes, his observations and the statements made to him, as a man of average caution he was justified in believing that those arrested had committed an offense. In any case, the requisite probable cause to suspect the defendants of an armed robbery clearly formed when Officer Difrisco peered into their car and saw the fruits and instrumentalities of the offense.
Similar to the foregoing would be an analysis applicable to the halting of the brown vehicle, and to the evidence seized from it which was used against the defendants. However, that was the vehicle actually described to the policy by witnesses to the earlier armed robbery. Furthermore, before the occupants of the brown vehicle were arrested one of them sought to flee. While it is true that an individual's apparent flight does not indicate guilt in and of itself, it is a factor to be considered in ascertaining the existence of probable cause. State v. Franklin, 353 So.2d 1315 (La.1978).
In any event, as with the stop of the white vehicle, the officers clearly had reasonable suspicion to detain the brown car. And in both instances, once the evidence inside came into view, that suspicion flowered into probable cause.
*1314 Nevertheless, the question of whether probable cause existed to arrest having been answered affirmatively, the question remains as to whether the warrantless search of the vehicles was permissible.
The search and seizure of the evidence from both cars was made without a warrant as required by the Fourth Amendment to the United States Constitution and the Louisiana Constitution, Art. 1, Section 5 (1974). A search conducted without a warrant is per se unreasonable unless it falls within one of the specific exceptions to the warrant requirements. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Packard, 389 So.2d 56 (La.1980). In a case such as this the burden is on the State to show that a search is justified by some exception to the warrant requirement. State v. Pomes, 376 So.2d 133 (La.1979); State v. Franklin, 353 So.2d 1315 (La.1977).
In that regard it is apparent that the plain view doctrine is applicable. In State v. Edsall, 385 So.2d 207 (La.1980), it was held:
"In order for the `plain-view' doctrine to be applicable there must have been a prior justification for an intrusion into a protected area, in the course of which evidence was discovered inadvertently, or an officer must have inadvertently observed evidence of a crime from a vantage point without intrusion upon a protected area, and it must have been immediately apparent without close inspection that the items were evidence or contraband. When an officer observes evidence of a crime before entering a protected area, he may not seize the evidence without first obtaining a warrant, absent exigent circumstances or another exception to the warrant requirement. State v. Brown, 370 So.2d 525 (La.1979); State v. Parker, 355 So.2d 900 (La.1978)."
The record of the hearing on the motion to suppress reveals that Officer Difrisco saw the .25 caliber pistol and other evidence upon the seizure of the vehicle. The seizure thus appears to have been inadvertent and the evidentiary character of those items seized immediately obvious. Additionally, as indicated earlier, the probable cause to arrest the occupants for the apparent commission of armed robbery also would give the officer probable cause to search the vehicle for the fruits and instrumentalities of the crime. Furthermore, Officer Difrisco's entry appears justified by exigent circumstances. Exigency here may be found in the fact that the vehicle could have been moved or the evidence lost or destroyed. The officer's search was reasonable under those circumstances.
The search here may also be justified as one incident to a lawful arrest, another exception to the warrant requirement. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This justification for a warrantless search of a person arrested for a crime is within the conceptual scope of removing any weapons from within the possible reach of the arrested person. Chimel, supra; State v. Blanchard, 374 So.2d 1248 (La.1979).
The foregoing analysis, as applied to the white car, would be applicable to the search of the brown vehicle in view of Detective Rice's testimony that the evidence seized was in plain view on the seat of the vehicle and under circumstances indicating that at least one of the occupants remained near the vehicle with its interior under his immediate control.
In resolving the basic question concerning the existence of probable cause, it should be noted that such a determination is, in the first instance, a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). His conclusion here that probable cause was present is entitled to great weight by this court.
It is the conclusion of this court that the officers had probable cause to arrest and that the consequent search of the vehicles was justified, as indicated, by exceptions to the warrant requirement.

*1315 III

MOTION TO SUPPRESS IDENTIFICATION BECAUSE OF THE POLICE LINE-UP
Here the defendant argues that the trial court committed error in denying his motion to suppress identification. The argument is made that the line-up to which he was subjected on October 20, 1978 was "suggestive and prejudicial". At the defendant's trial, evidence of this line-up was presented.
At the hearing on the motion to suppress the State presented the testimony of Police Detective Ronald Richards, who conducted the line-up which defendant finds objectionable. The officer testified that the two defendants were placed in the line-up with seven prisoners from the House of Detention, who apparently had been selected on the basis of their resembling both of the accused. All of the line-up participants wore House of Detention jumpsuits and had numbers around their necks. The witness stated that the defendants did not have an attorney present but that he had contacted the indigent defender's office, informed them of the line-up and after waiting an hour, proceeded to conduct the investigation.[3]
At the police line-up four victims of the armed robbery at the Privateer Lounge were brought to see it. They were instructed to be seated away from each other and not to talk to nor to signal anyone. Then the line-up of the nine men was brought onto a stage in the police department viewing room. Each participant, individually, was instructed to walk and was positioned at various angles in order to afford the victims a full view. Following the line-up the victims, who had remained separated, were individually interviewed. Four of the witnesses positively identified defendant Nicholas and two positively identified defendant Roland. One witness made a tentative identification of Nicholas and also of a third participant.
Detective Richards testified that it was neither indicated nor suggested in any way to any of the victims whom they should identify. Each of the four victims was called at the hearing on the motion and testified that their decisions were made entirely of their own free will, that they followed police instructions to sit apart and remain silent and that no one influenced their decisions.
With regard to the question of suggestiveness, State v. Robinson, 386 So.2d 1374, 1377 (La.1980) held that:
"A line-up is unduly suggestive if the identification procedure displays the defendant so that the witness' attention is focused on the defendant. For example distinguishing marks on the photographs may single out defendant. State v. Guillot, 353 So.2d 1005 (La.1977). A line-up can also be suggestive if a sufficient resemblance of physical characteristics and features of persons in the line-up does not exist to reasonably test the identification. State v. Guillot, supra; State v. Gray, 351 So.2d 448 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). Even if an identification procedure is suggestive, it will not result in reversal of a conviction if it is demonstrated that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, supra."
A photograph of the line-up in the instant case (State's Exhibit 10) is provided in the record. A review of the nine subjects photographed in the line-up offers no support whatsoever for the defendant's allegation of suggestiveness. Neither defendant stands out from the other seven men. There appears to have been an adequate matching of basic physical appearance. In any case, as indicated above, even if the identification procedure used here is *1316 determined to have been suggestive, that alone would not render the identification inadmissible nor result in reversal. State v. Davis, 385 So.2d 193 (La.1980).
Due process is violated by the substantial likelihood of misidentification, not merely suggestiveness. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Even if suggestive, the identification is admissible if the totality of the circumstances demonstrate that the identification was reliable. State v. Guillot, supra.
With regard to the reliability of an identification the factors to be considered include:
"... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."
Manson v. Brathwaite, supra; State v. Guillot, supra.
In the instant case the trial judge limited inquiry at the hearing to suggestiveness. Nevertheless, applicability of the above standards of reliability to the facts at hand is possible. In spite of the limitation, the record of the hearing does indicate that the victims were able to view the defendants for several minutes, although they were offered only a limited view because of partial masks worn by the armed robbers during the holdup.
More light is shed on what the victims saw by an examination of the record of the trial itself. One of the victims, Arthur Simmons, made a positive identification of both defendants at the line-up and at the trial. This witness testified that despite the bandanas around the armed robbers' lower faces, he had a full opportunity to view the defendants in the well-lit bar as they held up each of the six patrons. He testified, furthermore, that the robbers stayed in the bar for five to ten minutes. Similar accounts of the original incident and the chance they had to view the armed robbers were given at the trial by the other three victims who participated in the identification.
Consequently, applying the Manson reliability standards, it is apparent that the victims at the bar had from five to ten minutes to view the defendants in a well lighted room at very close range. Furthermore, these were victims, caught in a dangerous situation and confronted by men capable of killing them instantaneously, and not merely passersby nor mere observers. These individuals, who undoubtedly were filled with a high degree of attention at the time, were positive in their identifications (with the exception of one tentative identification of Ms. Alderman) and the firmness of their identification.
Considering the totality of the circumstances dealing with the reliability of the victims' identification and the line-up in the instant case, it certainly does not appear that there existed any substantial likelihood of misidentification. Consequently, even if it should be determined from viewing the photograph that the line-up was suggestive (in point of fact, the photograph actually underscored the fact that the line-up was far from suggestive), the introduction of this out-of-court identification does not appear to have violated due process and the trial court does not appear to have erred in denying the motion to suppress the identification.
Thus, as indicated at the outset of this portion of this opinion, it should be quite apparent that this particular objection by the defense was utterly groundless. To say that this claim of error lacks merit is a pronounced understatement.

IV

THE CLAIM OF ERROR DURING THE VOIR DIRE
The defendant contends that the trial court committed error in his refusal to allow prospective jurors to be questioned as *1317 to the verdicts of juries on which they previously served.
During voir dire of a prospective juror, defense counsel asked her "[w]hat was the verdict" in the second degree murder case in which she had been a juror earlier in the month. The State objected and the trial judge sustained the objection. Defendant asserts that this was the erroneous ruling by which he was prejudiced.
In State v. Holmes, 347 So.2d 221, 223 (La.1977) this court, in overruling prior jurisprudence, held that
"... it is permissible for defendant to ask prospective jurors during voir dire questions such as: (1) Have you ever served on a criminal jury before? (2) What was the charge in that case? (3) What was the verdict in the case?, etc."
In light of this decision, the trial court's restriction here appears to have been error. However, as set forth in State v. Vinet, 352 So.2d 684, 687 (La.1977):
"Undoubtedly the defense is entitled to wide latitude in examining prospective jurors. This right is, however, to be exercised within the discretion of the trial judge who determines the scope of the examination under the prevailing facts and circumstances. La.Code Crim.Pro. art. 786. And when the question arises whether voir dire examination has been unduly restricted, the disallowance of a proper question is not automatically reversible. In evaluating the fairness of the ruling the entire examination must be considered. State v. Monroe, 329 So.2d 193 (La.1976); State v. Jones, 315 So.2d 650 (1975). (Emphasis supplied)
In the instant case the record does not provide the entire voir dire of this nor any other juror. Only the questioning that was subject to the objection is provided in the record. Lacking a full record of voir dire, a determination of the nature and seriousness of the trial judge's error in restricting the defendant's examination appears premature.
In any case, counsel makes no allegation that the trial court otherwise curtailed voir dire, and the restriction here, standing alone, does not appear to deprive defendant of his right to full voir dire under LSA-Const., Art. I, § 17. Indeed, against the background of the facts of this case and considering the extensive evidence against the two defendants, it is virtually impossible to conceive of any response by the juror to the blocked question which, under any reasonable consideration, would have made a jot or a tittle of difference in the possible outcome of the case. If there was error, therefore, it essentially was harmless error.
The argument of substantial error with regard to the voir dire does not support any claim of denial of due process.

V

THE CLAIM OF ERROR UNDER THE BOYKIN CASE
The defendant urges that the trial court erred in allowing the introduction of prior convictions for impeachment purposes without proof of "Boykinization."
In State v. Roland, 379 So.2d 721 (La. 1977), a case involving the same defendants, this court determined that:
"... the use for the impeachment purposes of a prior conviction void for failure to afford defendant his right to counsel, or otherwise so involuntary that the reliability of the conviction is impaired, deprives an accused of due process of law. Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); State v. Bernard, 326 So.2d 332 (La.1976); Cf. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The burden of proof rests with the defendant. See Loper v. Beto, supra; State v. Bernard, supra.
"Our recent decisions in State v. Lewis, supra, and State v. Holden, 375 So.2d 1372 (La.1979), relative to the use of prior convictions to enhance subsequent penalties, were not intended to change the *1318 rules of law applicable to impeachment nor to shift any burden of proof in such situations to the state." (Emphasis supplied)
Defendant asserts that he has met the requisite burden of proof by entering into a stipulation with the State that a search of the records of his prior convictions revealed no forms to indicate that he made a knowing and affirmative waiver of his constitutional rights. Defendant urges that the trial court's refusal to accept this proof of "non-Boykinization" and the consequent admissibility of his prior conviction resulted in his being unable to take the stand on his own behalf.
As recently set forth by this court in State v. Lafleur, 391 So.2d 445 (La.1980):
"It is now well established that a guilty plea is constitutionally valid only if the record clearly shows that the defendant was informed of his constitutional rights, including the right to jury trial, the right to confront accusers, and the privilege against self-incrimination, and then knowingly and voluntarily waived these rights. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The trial judge cannot rely on an assertion that the rights were explained to the defendant out of court; he must independently determine, through a direct colloquy with the defendant, whether the defendant fully understands the connotation and consequences of the guilty plea. State v. Williams, 384 So.2d 779 (La. 1980)." (Emphasis supplied)
Though the guilty plea here was used to impeach the defendant not to enhance his sentence, as is often the case when dealing with a Boykin question, there appears no justification, nor decision by this court, to require that a lesser standard of proof of defendant's knowing and affirmative waiver be utilized. Here, the defendant has failed to meet his burden of affirmatively showing that he was not properly "Boykinized." Defendant has not demonstrated an absence of the critical direct colloquy required by Boykin. Since the proof is inadequate, the trial judge's ruling that evidence of the conviction could be introduced appears correct.
There is no showing in the trial judge's ruling of error substantially prejudicial to the defendant.

VI

THE ADMISSION INTO EVIDENCE OF THE SHOTGUN AND TWO HANDGUNS
In this particular claim by the defense claiming error in the trial it is contended that the court seriously prejudiced the defendant's position by admitting into evidence a shotgun and two handguns whichit is arguedhad not been "sufficiently identified as connected to the charged offense."
Here it should be sufficient response to cite the recent case of State v. Lawson, 393 So.2d 1260 (La.1981):
"To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case. Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Paster, 373 So.2d 170 (La. 1979); State v. Drew, 360 So.2d 500 (La. 1978), cert. denied, 439 U.S. 1059 [99 S.Ct. 820, 59 L.Ed.2d 25] (1979)." (Emphasis supplied)
Furthermore, this issue has in essence been disposed of in the initial issue treated by this opinion wherein the factual and legal support of the probable cause to arrest the defendants and the justification for the *1319 seizure of the weapons as evidence were treated at length.
There is no merit here to this contention made in behalf of the defendants.

VII

OTHER CLAIMS OF ERROR MADE BY THE DEFENSE
The defendant contends that the trial court erred in allowing the State to introduce evidence and make statements that referred to other crimes. In point of fact, an examination of the record reveals that this is simply not the case. Inasmuch as this statement is factually incorrect it would be redundant to attempt to cite any law to the effect that factually incorrect statements do not justify consideration.
Defendant also finds error in the trial court's sustaining the State's objection to the testimony of defense witness, Stacey Hirstius. That witness, apparently a criminal court minute clerk, was to testify concerning the court minutes as to who was originally charged with the armed robbery. The State objected on relevancy grounds and the trial judge agreed. The trial judge's decision to exclude the evidence here, especially since it hardly could bear upon this defendant's own guilt, does not appear to have been an abuse of discretion in any sense of the phrase that would justify overturning the trial court's decision not to admit.
Inasmuch as the irrelevancy of this contention of error should be as apparent to any layman as to a member of the bar, it would seem unnecessary to have to cite supporting law. However, in order to underscore that a trial judge's ruling concerning the relevancy of evidence will not be disturbed on appeal in the absence of a clear abuse of discretion, the following cases are cited: State v. Alford, 384 So.2d 761 (La.1980); State v. Echols, 376 So.2d 1244 (La.1979); State v. Weems, 358 So.2d 285 (La.1978); State v. Winston, 343 So.2d 171 (La.1977). Neither of the foregoing claims of error possesses any merit.
Finding no reversible error, we affirm the conviction and sentence.
AFFIRMED.
CALOGERO, J., concurs.
NOTES
[*] Judges Garrison, Chehardy, and Barry of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Blanche, and Lemmon.
[1] Charges as to a third defendant, Cleveland Tate, were nolle prosequied on March 8, 1979, apparently in return for a guilty plea on two counts of violations of La. R.S. 14:95.1.
[2] In his brief, counsel for the defendant Nicholas argues only the issue of possible suppression of the evidencethe initial issue treated in this opinion. Consequently, the discussion of the other issues herein relate only to defendant Roland.
[3] The defendants were charged on November 3, 1978 and the line-up held on October 20, 1978. In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court held that the presence of counsel at a pre-indictment line-up was not a requirement of due process. This court has followed Kirby in a number of decisions. State v. Hargrove, 330 So.2d 895 (La.1976); State v. Johnson, 327 So.2d 388 (La.1976).