473 So.2d 115 (1985)
James Lee LASTRAPES, Plaintiff-Appellant,
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY, et al., Defendant-Appellee.
No. 84-551.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
Rehearing Denied August 6, 1985.
*116 Ryder & Deshotels, Alfred Ray Ryder, Oberlin, for plaintiff-appellant.
Dubuisson & Dubuisson, Edward B. Dubuisson, Opelousas, for defendant-appellee.
Before FORET, LABORDE and YELVERTON, JJ.
FORET, Judge.
This is a tort suit brought by plaintiff, James Lee Lastrapes, against defendant, South Central Bell Telephone Company, and the City of Opelousas. The City of Opelousas filed an exception of no cause of action alleging that plaintiff's exclusive remedy against it was in worker's compensation. The trial court granted the City's exception and dismissed it from the suit. Plaintiff has not appealed the trial court's dismissal of the City of Opelousas. A jury was empaneled and, prior to the commencement of trial, plaintiff filed a motion challenging the general venire and the jury, which motion was denied by the trial court. After trial on the merits, the jury found for defendant telephone company. Plaintiff appealed.
This appeal presents us with several issues:
(1) Whether the general venire was defective due to the under-representation of blacks in the voter registration list from which the general venire was chosen.
(2) Whether the trial court acted properly in excusing several prospective black jurors for undue hardship.
(3) Whether the trial court erred in denying plaintiff's request to excuse prospective jurors for cause.
(4) Whether the jury erred in determining that defendant was not guilty of negligence that was the proximate cause of plaintiff's accident and injuries.
(5) Whether the trial court erred in excluding certain evidence as impermissible opinion.
(6) Whether the trial court erred in excluding certain evidence which it ruled was beyond the pleadings.

*117 FACTS
Plaintiff, James Lee Lastrapes, was employed by the City of Opelousas as a lineman II in the city's electrical department. On June 28, 1981, at about 4:00 A.M., plaintiff was sent to North Court Street in the City of Opelousas, to work on a power pole which had been struck by a hit-and-run vehicle. An eight-foot section of the forty-foot high pole had been broken out. About three feet of the pole remained in the ground. The top section of the pole was resting upright on the ground, supported by the various wires that were attached to it. Although the pole itself was owned by South Central Bell, it was used jointly by South Central Bell, the City of Opelousas, and a cable t.v. company. At the very top of the pole, there was a crossarm with three primary, high voltage wires. From these, lines ran to three transformers which were attached to the pole beneath the crossarm. Beneath the transformers were "drop wires" which ran to houses and buildings in the area. These wires included a large quadraplex wire which went to Roy Motors Automotive Repair Shop. All of these electrical wires and equipment belonged to the City of Opelousas. Beneath the electrical "drops" was South Central Bell's telephone cable, which had drops going to houses and businesses in the area. Beneath the telephone cable was the cable t.v. company's wire.
After the pole was damaged, a number of the drop wires running to it hung low over the street, and the police had to block off traffic. Plaintiff was the first repairman to arrive on the scene, but did not take any action with regard to the broken pole except to determine that it belonged to defendant, South Central Bell. Sometime afterwards, plaintiff's supervisor, Peter Cropper, arrived, followed by a South Central Bell cable repair technician, Russell Quebedeaux.
On the request of police, South Central Bell's employee, Quebedeaux, began to cut some of the telephone drop wires which were hanging low over the street. He had cut five or six of the approximately twelve wires when he noticed that the pole was starting to lean. He realized that as he cut the telephone wires, the tension exerted in the opposite direction by the large electrical quadraplex wire which ran to Roy Motors was causing the pole to lean in the direction of the large wire. At that point, he stopped cutting the telephone wires and informed plaintiff's supervisor that the large quadraplex wire would have to be removed before he, Quebedeaux, cut any more telephone wires.
Plaintiff's supervisor instructed plaintiff to cut the large quadraplex wire. Plaintiff removed a ladder from his truck and propped it up against the broken utility pole that was held upright by the remaining wire. Quebedeaux warned both plaintiff and his supervisor that it would be dangerous to cut the quadraplex wire unless the pole was secured, either by tying it to the three-foot section of the pole that was still anchored in the ground or by using pike poles. Plaintiff assured Quebedeaux that it was not necessary to secure the pole. Plaintiff climbed the ladder and began the procedure of disconnecting the quadraplex wire. The wire was attached to the pole by a "hook-and-eyelet type" connection. After plaintiff cut the wire, it was necessary to unhook the wire from the pole. Because of the tension on the quadraplex wire, plaintiff was unable to unhook it, and his supervisor, Mr. Cropper, began to pull on it to relieve the tension so that plaintiff could unhook it. At some point, the telephone company's employee, Quebedeaux, joined with Cropper. With the two men pulling on the wire, plaintiff was able to knock a pin loose, which released the wire. As soon as the wire came loose, the pole began to fall. In order to avoid the high voltage wires at the top of the pole, plaintiff jumped off the ladder. He landed on his feet but immediately fell to the ground. When those present came to his assistance, he was unable to stand up. A medical examination revealed that plaintiff had sustained fractures in both of his heels.

*118 GENERAL VENIRE
On the day that trial was to commence, plaintiff filed a motion challenging the general venire and the jury that was selected to try his case. In his motion, plaintiff, who is black, contended that the choosing of the general venire from the St. Landry Parish voter registration lists violated his constitutional right to due process since blacks were under-represented on these lists.
The law presumes the legality of a venire, and the party who asserts the contrary must prove it. State v. Badon, 338 So.2d 665 (La.1976). There is nothing in the record to indicate that blacks were, in fact, under-represented in the jury venire, and plaintiff clearly failed to carry his burden of proof. In an attempt to present evidence in support of his challenge to the jury venire, plaintiff has filed a motion with us asking us to order the Registrar of Voters of St. Landry Parish to disclose the racial makeup of the general venire list. This motion, however, comes too late and must be denied. It was encumbent upon plaintiff to produce evidence in support of his motion challenging the general venire at the hearing of that motion. Plaintiff is now attempting to elicit new evidence and have us consider it on appeal. This attempt ignores the well-settled rule that an appellate court cannot consider new evidence that was not presented for the trial court's consideration.
Plaintiff has also objected to the manner of choosing the jury. He contends that the trial court erred when it excused three black jurors who informed the court that they had no transportation. The record shows that the trial judge questioned these three jurors. The trial court was satisfied that jury service would result in undue hardship to them. We find no error in the trial court's action. A trial court may, on its own initiative, excuse prospective jurors for undue hardship or extreme inconvenience and, in this regard, is vested with broad discretion. LSA-R.S. 13:3044(C); LSA-C.Cr.P. Art. 783; State v. Brown, 414 So.2d 726 (La.1982). In his brief, plaintiff's attorney points out that no prospective white jurors were excused because of lack of transportation. Although this fact may seem to indicate discriminatory intent, the record indicates that the three black jurors who were excused were the only prospective jurors who claimed to lack transportation. Under the circumstances, the trial judge's excusing the three prospective jurors evinced no intent to discriminate.
Plaintiff also claims that the selection of the jury was defective because defendant's attorney used all of the four peremptory challenges he exercised to dismiss black jurors. Ordinarily, the motive for the exercise of peremptory challenges is not subject to judicial review in the absence of the systematic exclusion of black jurors over a period of time. State v. Curry, 319 So.2d 917 (La.1975); State v. Gilmore, 323 So.2d 459 (La.1975). Plaintiff made no attempt to show any historical exclusion of black jurors and, therefore, failed to lay the necessary predicate for his objection to the defendant's use of peremptory challenges.
In his brief, the attorney for plaintiff raises several other objections to the selection of the jury. These objections, however, did not appear in plaintiff's motion challenging the selection of the jury and apparently were not raised at the trial level. Unless pleaded before trial, all objections to the manner of selecting or drawing the jury are waived. LSA-R.S. 13:3052.

DEFENDANT'S NEGLIGENCE AS A PROXIMATE CAUSE OF PLAINTIFF'S ACCIDENT
Plaintiff contends that defendant's employee, Russell Quebedeaux, acted negligently when he helped plaintiff's supervisor pull on the quadraplex wire and that Quebedeaux's negligence was a proximate cause of plaintiff's accident and injuries. The jury, however, found that defendant, South Central Bell, was not guilty of any negligence which was the proximate cause *119 of plaintiff's accident and resulting injuries. We have carefully examined the record and find that the evidence clearly supports the jury's determination.
Quebedeaux was not directing plaintiff's actions as plaintiff worked. It appears that plaintiff or his supervisor requested Quebedeaux's help. Quebedeaux warned plaintiff that the pole should be secured in some fashion before the quadraplex wire was released, but plaintiff assured him that it was not necessary. Quebedeaux then aided plaintiff and plaintiff's supervisor, doing nothing more than they requested him to do.
Plaintiff testified that in order to release the wire from the utility pole, he had to knock a pin out of the "clevis". From the testimony of plaintiff, it is clear that when plaintiff's supervisor and Quebedeaux pulled on the wire, this only created slack in the wire which allowed plaintiff to knock the pin out. Had plaintiff not knocked the pin out, the wire would not have been released, and plaintiff's accident would not have occurred. The immediate cause of plaintiff's accident was plaintiff's knocking the pin out of the clevis, and not any action undertaken by Quebedeaux.
To be a cause-in-fact, a cause must play a significant and substantial role in causing an injury, and not a remote or slight part. Doyen v. Cessna Aircraft Company, 416 So.2d 1337 (La.App. 3 Cir. 1982); Dore v. Cunningham, 376 So.2d 360 (La.App. 3 Cir.1979). The jury could have concluded that the actions of Quebedeaux did not play a significant or substantial role in causing plaintiff's injury, but only a remote or slight part. The jury did not commit manifest error in finding that defendant was not guilty of any negligence that was the proximate cause of plaintiff's accident or injuries.

OPINION EVIDENCE
The plaintiff claims that it was error for the trial court to exclude a statement made by defendant's employee, Russell Quebedeaux. The statement made by Quebedeaux was to the effect that the only mistake he had made was in helping plaintiff and plaintiff's supervisor push the quadraplex wire. The trial judge excluded this statement on the basis that it was an opinion. In doing so, the trial judge acted within his discretion.
Quebedeaux admitted, and there was no dispute that Quebedeaux had, in fact, helped push or pull the quadraplex wire. The only purpose of introducing the statement then was to show that Quebedeaux had considered his action to be a mistake. We agree with the trial judge that the statement which plaintiff sought to put into evidence was impermissible opinion evidence.

EVIDENCE BEYOND THE PLEADINGS
The trial court ruled that any evidence that South Central Bell's employee, Quebedeaux, had instructed or ordered plaintiff to climb the pole was beyond plaintiff's pleadings. In his pleadings, plaintiff had specifically alleged that he was instructed by his supervisor to climb the broken telephone pole and that plaintiff climbed the pole "in accordance with the instructions of his employer". The evidence which the trial judge excluded went beyond plaintiff's pleadings and was, therefore, properly excluded. Moreover, plaintiff, himself, testified at trial that his supervisor was the one who had instructed him to climb the pole. Any testimony that it was not plaintiff's supervisor, but South Central Bell's employee, Quebedeaux, who had instructed plaintiff to climb the pole would have contradicted plaintiff's own testimony.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.